LEWIS M. TEEL, Respondent, *v.* ABRAHAM YOST, Appellant.

Neither process, declaration nor personal appearance of the defendant in any form is requisite in order to authorize the rendition, by a competent court, of a valid personal judgment by confession; an appearance upon the entry of the judgment of an agent, appointed by the defendant and authorized to appear, constitutes an appearance by him and gives the court, jurisdiction to render judgment to the effect authorized.

It is not necessary that a power of attorney to confess judgment should be acknowledged or attested by a subscribing witness.

The filing in court of a power of attorney authorizing the confession of judgment for a specific sum gives the court jurisdiction over the party executing it, and authority to enter judgment for the sum specified, without proof of the nature, existence or amount of the debt.

The provision of the Code of Civil Procedure (§ 1274) in relation to judgments by confession, requiring the defendant to state the nature and circumstances of the indebtedness and to verify the same, has no relation to the jurisdiction of the court or the authority of the clerk to enter judgment; its only purpose is to protect creditors from a judgment fraudulently confessed by an insolvent debtor; and so, the omission of the verified statement does not render the judgment void, but only voidable at the instance of certain creditors; it may not be impeached by the defendant because of the omission.

The history of legislation in this state, in relation to judgments by confession given.

The decisions of the highest courts of a state, as to the force and effect to be given to judgments of the courts of that state, may not be disregarded by the courts of another state, except for the gravest reasons and those demanded by the clearest rules of public policy and justice.

A judgment by confession entered in another state upon a promissory note containing an authority to any attorney of the state to confess judgment for the sum agreed to be paid, if valid as a judgment *in personam* under the laws of that state is equally valid here, and may be enforced by action in this state.

The fact that such a judgment was entered before the maturity of the note, does not affect its validity here, in case it appears that the judgment was authorized by the laws of the state where it was rendered.

The manner of entry of such a judgment is matter of form, to be regulated by the laws of the state where it was rendered.

In an action upon a judgment by confession rendered by a court of general jurisdiction of Pennsylvania, it appeared that said judgment was entered by the prothonotary, the clerk of the court, upon an instrument known as a "judgment note," filed with the records of the court which, after a promise to pay a certain sum, authorized "any attorney of any court of record in Pennsylvania or elsewhere, to confess judgment therefor," and waived all stay of execution from and after the maturity of the note. Both parties to the note resided in Pennsylvania. It appeared that such notes were authorized by the laws of said state and that a prothonotary, as the clerk of the court, upon application of the owner of the note is required to enter judgment thereon against the person executing the same, without the agency of any attorney, and it was found that the judgment was duly rendered according to the law of Pennsylvania. *Held*, that the judgment was valid and conclusive against defendant here.

Reported below, 25 J. & S. 481.

(Argued June 24, 1891; decided October 6, 1891.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made the first Monday of December, 1889, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Lemuel Skidmore* for appellant. The alleged judgment record shows that there was nothing offered to the Pennsylvania court as the basis of a judicial decision. It is in the nature of a mere memorandum by the clerk, and does not amount to a judgment. (*Cromwell* v. *Bank of Pittsburg*, 2 Wall. 584; *Thatcher* v. *Blackbourne*, 1 N. II. 242; *Doughty*

v. *Doughty*, 28 N. J. Eq. 585.) The judgment alleged was not a judgment by confession. (*Baldwin* v. *Freydendohl*, 10 Ill. App. 106.) The Pennsylvania law does not authorize entry of judgment for an amount not appearing to be due. (*Allen* v. *Patterson*, 7 N. Y. 476; 3 Chitty Pr. 669; *Allen* v. *Smillie*, 1 Abb. Pr. 354; *Nicholl* v. *Bromley*, 2 B. & B. 464.) The court erred in allowing Mr. Ward, against the objections of the defendant, to explain the meaning and intention of the prothonotary in entering the so-called judgment. (Best on Evidence, §§ 590, 591.)

*Samuel Blythe Rogers* for respondent. The Court of Common Pleas of Northampton county, Pennsylvania, is a court of general jurisdiction. (*Pringle* v. *Woolworth*, 90 N. Y. 502; *Hatcher* v. *Rochelau*, 18 id. 86, 95.) The defendant, being domiciled in Pennsylvania at the time the judgment was entered there, was bound personally by the judgment, provided it was rendered in accordance with the laws of that state. (*Teel* v. *Yost*, 24 J. & S. 456; *Trebilcox* v. *McAlpine*, 46 Hun, 469; *Huntley* v. *Baker*, 33 id. 578; *L. Ins. Co.* v. *French*, 18 How. [U. S.] 404; *Gibbs* v. *Q. Ins. Co.*, 63 N. Y. 114, 126; *Hunt* v. *Hunt*, 72 id. 238; 1 Whart. on Ev. § 808; *Elsasser* v. *Haines*, 52 N. J. L. 17; *Huntley* v. *Baker*, 33 Hun, 578.) The judgment sued on is, under the laws of Pennsylvania, in every respect a valid, binding, personal judgment. (Laws of 1806, chap. 122, § 28; *Braddie* v. *Brownfield*, 4 Walts, 474; *Bartholomew* v. *Wood*, 61 Penn. St. 100; *Colvin* v. *Blymer*, 121 id. 582; *Montague* v. *McDowell*, 99 Penn. 265; *Hopkins* v. *West*, 2 Norris, 109; *Rutherford* v. *Boyer*, 3 id. 347; *Hageman* v. *Salisberry*, 74 Penn. St. 280, 284.) The record here proved is sufficient to show the rendition of a judgment. (*Lewis* v. *Smith*, 2 S. & R. 142, 155; *Cromwell* v. *Bank of Pittsburg*, 2 Wall., Jr. 569, 581; *Commonwealth* v. *Conrad*, 1 Rawle, 249; *Helvete* v. *Rapp*, 7 S. & R. 505; *Regina* v. *Yeomley*, 8 Ad. & El. 806, 818; *Leathers* v. *Cooley*, 49 Me. 337, 343; *Washington S. P. Co.* v. *Sickles*, 24 How. [U. S.] 333, 340.) The record is not a mere memorandum of

the clerk, but the only judgment in the case. (*Hatcher* v. *Rochelau*, 18 N. Y. 86, 94; *Smith* v. *Tiffany*, 1 T. & C. 552; *Whittaker* v. *Bramson*, 2 Paine, 209, 222.) It does not affect the validity of the judgment that it was entered before the note was due. (*Montelius* v. *Montelius*, 1 Bright. 79; *Helvete* v. *Rapp*, 7 S. & R. 305; *Cooper* v. *Shauer*, 101 Penn. St. 547; *Scudder* v. *Coryell*, 10 N. J. L. 345; *Sand Blast Co.* v. *Parsons*, 54 Conn. 313.) Appellant ignores entirely the element of assent on the part of the defendant which renders the judgment valid. (*Reynolds* v. *Hall*, 2 Ill. 35; *Feemster* v. *Ringo*, 5 T. B. Mon. 336; *Duckham* v. *Smith*, Id. 372; *Rigney* v. *White*, 4 Daly, 400.) If the defendant had any defense to the note or complaint to be made of the judgment they might and should have been presented to a Pennsylvania court. (*Montague* v. *McDowell*, 99 Penn. St. 267.)

Ruger, Ch. J. This was an action upon a judgment, and the question involved is, whether the record in evidence constituted a valid judgment in another state by confession.

In the case of such a judgment it is, of course, unnecessary that any process should be issued or served, declaration filed, or personal appearance entered by the defendant, as these proceedings are totally inconsistent with the nature of a judgment by confession. The appearance by an attorney, under a written power from the party, authorizing his consent to a judgment, is the legal equivalent of the process and proceedings usually taken in an action *in invitum*. In all such cases it is simply a question as to what the principal has authorized to be done in his name, and does not involve any of the questions arising in an action *in invitum* against resident or nonresident defendants. The judgment sued upon purported to have been rendered by the Court of Common Pleas of the state of Pennsylvania, on the 14th day of January, 1878, in favor of the plaintiff, Lewis M. Teel, and against the defendant Abraham Yost, for $2,268, D. S. B., or as upon debt without process. It was entered upon an instrument, filed in the records of the court, reading as follows:

" $2,268.　　　　　　" SOUTH BETHLEHEM, *January* 12, 1878.

" One year after date I promise to pay Lewis M. Yost, twenty-two hundred and sixty-eight dollars, without defalcation, for value received. And I also hereby authorize any attorney of any court of record in Pennsylvania, or elsewhere, to confess judgment therefor and release of errors, and I do hereby waive all stay of execution from and after the maturity of the above note. Witness my hand and seal the day and date above written, with ten per cent allowed for collection fees, with interest from date.

　　　　　　　　　　　　."ABRAHAM YOST. [L. s.]
" Witness present :
　　　　　" GEO. ZIEGENFUSS."

This instrument is usually called a judgment note, an obligation quite common in the state of Pennsylvania. The parties to the note were both residents of that state, and had been so for a long time previous to and after the rendition of the judgment, and the Court of Common Pleas was a court of general jurisdiction in that state, of which the prothonotory was clerk and had charge of its records, and authority to enter judgments by confession. If the court in Pennsylvania had jurisdiction of the person of the defendant and the subject-matter of the action, whatever course it might afterwards have pursued in determining the rights of the parties, they cannot be heard now to relitigate the questions considered in that action. As to such matter, upon the principle of *res ajudicata,* the judgment is binding and conclusive upon the parties. If this was a valid judgment under the laws of the state where it was rendered, it must, under the Constitution of the United States and the laws of congress, be accorded the same force and effect in this state that it had in the state where rendered. (§ 1, art. 4, Constitution U. S. ; § 905, U. S. R. Statutes.)

The rule laid down in *Shumway* v. *Stillman* (6 Wend. 453), was : " That the judgment of a court of general jurisdiction, in any state in the Union, is equally conclusive upon the parties in all the other states as in the state in which it was ren-

dered. This, however, is subject to two qualifications. First. If it appears by the record that the defendant was not served with process, and did not appear in person or by attorney, such judgment is void; and, second, if it appears by the record that the defendant appeared by attorney, the defendant may disprove the authority of such attorney to appear for him." This case has been quite uniformly cited and approved as a leading case in subsequent cases in this state.

Under the authority of this rule, we do not see how the defendant could have been seriously prejudiced by the want of notice of the proceedings leading to the judgment, as it was competent for him to show in defense of this action that the power of attorney upon which the judgment proceeded was a forgery, and conferred no authority upon anyone to appear for him and confess judgment thereon; but no such proof was given or offered upon the trial. The presumption, therefore, is that the note was the genuine obligation of the defendant and gave actual authority to the prothonotary, or any other attorney, to consent to the judgment authorized by it.

Several objections are raised to the recovery in this action; some of them going to the form of the judgment, and others assailing the jurisdiction of the court to render it; but we are of the opinion that none of them are well founded. It was found by the trial court as a question of fact that said "judgment was duly rendered and entered according to the laws of Pennsylvania. It is and was by the laws of Pennsylvania, a valid, binding adjudication *in personam*, against the defendant herein, and entitled by the laws of said state to have the same faith and credit given to it as if it had been entered upon a verdict after a trial in which the defendant had appeared." A finding of law to the same effect was made by the court, and it is upon exceptions to these two findings that the questions in the case arise.

These findings were amply supported by the evidence, and unless, therefore, it appears that some error of law was committed by the court on the trial, the judgment must be sustained. The evidence leaves no room for doubt but

that this was considered in form and substance a valid judgment *in personam*, in the state where it was rendered, and constituted a judgment within the meaning of the acts of congress requiring faith and credit to be given to it in other states. The reasons for this conclusion are so well stated in the opinions of the Supreme Court of that state, that we shall content ourselves with reference to two reported cases only.

It was said in the case of *Helvete* v. *Rapp* (7 Serg. & Rawle, 306): " The evident and sole intention of the legislature in conferring the power of entering a judgment on the judgment bond without the intervention of an attorney, was to exempt the obligor from the payment of costs to an attorney. This act was passed on 24th February, 1806. It provided that the prothonotary of any court of record, on the application of the original holder or his assignee, of a bond, note or other instrument on which judgment is confessed, or containing a warrant of attorney to confess a judgment, shall enter judgment against the person or persons who executed the same for the amount which, from the face of the instrument, appears to be due without the agency of any attorney or declaration filed, particularly entering on his docket the date and time of the writing, which shall have the same force and effect as if a declaration had been filed and judgment had been confessed by an attorney or given in open court in term time. * * * There being no literal form directed, and no precedent to guide the prothonotary in the exercise of this new duty, each has adopted his own mode; they are as various as their faces, and many of them scarcely present a feature to inform a purchaser or designate a judgment; but here is a substantial entry of a judgment bond, containing all that is necessary to give information. It is entered on the docket in the form of an action as a judgment bond, the names of the parties, the amount due, the date and time of the writing. It states the entry of a judgment bond, and seal of the defendant; the judgment bond is filed of record, entered the 17th May, 1815. What is entered? A judgment on the bond filed. No man could be deceived by

this mode of entry, for however inartificial it may be, however defective in the technical words of a judgment, none who called for information would be led into error; the docket entry gave full information. It might have been more formal. but still, it is the entry of a judgment, entered by the prothonotary who was authorized to make the entry."

The head-note in the case of *The Commonwealth for the Use of Black* v. *Conrad* (1 Rawle, 249) reads that "a prothonotary complies substantially with the directions of the act of assembly of the 24th February, 1806, when in entering judgment on a bond with warrant of attorney, upon the application of the party, he enters on his docket the names of the obligor and obligee in the form of an action as parties, the date of the bond and warrant of attorney, the penal sum, the real debt, the time of entering the judgment and the date of the judgment on the margin of the record."

These clear and explicit announcements by the highest courts of the state, of the force and effect given to such judgments in that state, are entitled to the highest respect, and cannot, without ignoring the requirements of comity and' propriety prevailing among sister states, be disregarded by the courts of other states. It should, in any event, be for the gravest reasons alone, and those demanded by the clearest rules of public policy and justice, that the courts of one state should deliberately deny to the decisions of the courts of another state the authority which they possess in the state where rendered. So far from the questions in this case being of that character, we are of the opinion that judgments by confession, in all material respects similar to the one under consideration, are not only valid judgments at common law, but have been authorized by the statute laws of most of the states of the Union, and, among others, by our own.

The principal claim made by the defendant on the argument of the case here, was that the note did not authorize a confession of judgment upon it before it was due; although it was also claimed that the record produced did not constitute a judgment, in as much as it did not appear thereby

that process was issued and served on the defendant, or declaration filed, or personal appearance made by him, or proof taken of the cause of action by the court, and, therefore, that it had no jurisdiction to render a judgment. We have already stated that in judgments by confession neither process, declaration nor personal appearance are anywhere required in order to authorize the rendition of a valid personal judgment by a competent court. The appearance of the agent appointed by the party in his warrant of attorney upon the entry of the judgment, constitutes, to every intent and purpose, an appearance by the party and gives the court jurisdiction to render a judgment to the effect authorized, against his principal.

We are also of the opinion that the entry of judgment before the maturity of the note, was sanctioned not only by the law of Pennsylvania, but by that of every other country where judgments by confession are permitted. The evidence in the case showed that it was the common practice in Pennsylvania to enter judgment on such notes at any time after their date, without respect to the time when they became due; but the prothonotary was not authorized to issue execution for their collection until, by the terms of the note, it became due.

The cases of *Commonwealth* v. *Conrad* (1 Rawle, 249), *Montelius* v. *Montelius* (1 Brightly, 79) and *Helvete* v. *Rapp* (7 Serg. & Rawle, 305) are examples of judgments on such notes; and in *Cooper* v. *Shaver* (101 Pa. St. 547) an application to set aside the entry of judgment on a collateral obligation guaranteeing the collection of a judgment with warrant of attorney was denied, although no proof was given that an effort had been made by, or that the plaintiff was unable to collect the original judgment.

In New Jersey, where the practice of giving bonds and notes with warrant of attorney is similar to that prevailing in Pennsylvania, the court held that it was not error to enter a judgment by confession upon a note before it became payable.

In this case there is no restriction upon the authority of the attorney to confess judgment, and the waiver of a stay of execution after the maturity of the note constitutes an implied

admission on the part of the defendant that judgment could be entered previous to that time.

Under the former practice of entering judgments upon a warrant of attorney it was uniformly held in England and this country, that where the warrant is given to secure the payment of money it is not necessary that the plaintiff should delay the signing of judgment until default be made in the payment, unless there is some restriction as to the time of entry in the warrant. (See Graham's Practice, 773, and cases cited.)

We are, therefore, of the opinion that the entry of the judgment before the maturity of the note was in accordance with the settled practice, not only in Pennsylvania, but also in other jurisdictions where judgments by confession are authorized.

There are, also, some authorities in this state holding, substantially, that judgments similar to the one in question, when rendered under the authority of the law of the state in which they are entered, may be enforced by action in this state. That doctrine was, impliedly, held in *Trebilcox* v. *McAlpine* (46 Hun, 471) by the General Term in the third department, where a judgment entered upon a Pennsylvania note similar to that under consideration, was held to be a valid judgment *in personam* in this state under the laws of congress, provided it was authorized by the law of the state where it was rendered.

The judgment in that case was reversed because it was not shown that the law in Pennsylvania authorized the entry of such a judgment. In *Huntley* v. *Baker* (33 Hun, 578) it was held by the General Term of the fifth department that, by reason of the relations between the state and its citizens, which afford protection to him and his property and impose duties on him as such, he may be charged by judgment *in personam*, binding on him everywhere as the result of legal proceedings instituted and carried on in conformity to the statute of the state furnishing a method of service which is not personal, and which, in fact, may not become actual notice to him even though he is absent from the state when the judgment is

entered. In that case the law authorized the service of a summons at the usual place of abode of the defendant, in case of his absence from the state, and the service was made by leaving it there in the presence of his wife.

In *Gibbs* v. *Queens Ins. Co.* (63 N. Y. 114) it was held that where a foreign fire insurance company has designated an agent in compliance with the state insurance laws, making the appointment of an attorney or agent in this state, upon whom process in suits against the company may be served, a prerequisite to its doing business in the state, it thereby submits itself to the jurisdiction of the state courts having authority to act; and by service of a summons on an agent so designated, the court acquires jurisdiction and may render a judgment valid and capable of being enforced upon any property within the jurisdiction. The court in that case refers to the case of *Douglas* v. *Forrest* (4 Bing. 686), where the decrees sued upon were pronounced in Scotland against a native thereof who went out of the jurisdiction before the commencement of the action and never returned, and had no notice of the proceeding. The decrees ordered him to pay certain sums of money. He had been summoned by posting according to the laws of Scotland. The Court of Common Pleas of England held these decrees to be consistent with the principles of justice. The ruling, however, was confined to a case " where the party owed allegiance to the sovereignty which gave the judgment from being born under it, and from his property being protected by it."

The court also cited *Becquet* v. *MacCarthy* (2 Barn. & Ad. 951), where it was held that a " judgment *in personam*, obtained in a British colony against an absent party without notice to him, but by the service, according to local law, upon the king's attorney-general for the colony, was not so contrary to natural justice as to be void." And in *Hobhouse* v. *Courtney* (35 Eng. Ch. Rep. 119) it was held that where a nonresident has created an attorney in fact to deal with the particular matter afterward in suit, a service on such attorney will be good service upon the principal.

We may also refer to the case of *Vallee* v. *Dumergue* (4 Exch. 290), where the defendant, a resident of England, was a shareholder in a French corporation, and, by the law of France, was required to elect a domicile, where the directors of the company might notify him of all proceedings of the company or its shareholders. By the law of France, all legal proceedings affecting any party having his real domicile out of that kingdom, left for him at such elected domicile, were as valid as if left at his real domicile in France. A judgment recovered by default upon process served at such elected domicile was held to be a valid judgment *in personam*, Baron ALDERSON saying : " It is not contrary to natural justice that a man who has agreed to receive a particular mode of notification of legal proceedings, should be bound by a judgment in which that particular mode of notification has been followed, even though he may not have had actual notice of them."

To come, however, more particularly to judgments by confession, I am of the opinion that the one under consideration conforms to all of the requirements of the law in the various countries where such judgments have been authorized. It is stated in Chitty's General Practice (2 vol. pg. 333, 1st ed.), in speaking of the jurisdiction of the Court of King's Bench, that : " This court (as well as Common Pleas and Exchequers) has an exclusive summary jurisdiction (as well of an equitable as of a legal nature) over a warrant of attorney, authorizing a judgment in the particular court and all proceedings thereon, to entertain a motion to set the same aside if it authorize a judgment in that particular court, and it has been usual to frame that security under seal, enabling certain attorneys therein named, or any other attorney of a particular court, to appear in that court as attorney for the party, and to receive a declaration in an action, usually of debt, for a named sum at the suit of the creditor, and to confess such action, or suffer judgment by *nil dicet*, or otherwise, to be entered up against the party, and also authorizing such attorneys, respectively, to release any errors in the proceeding.   *   *   *   How or when this peculiar security for a debt, authorizing a creditor,

as it were, *per saltum*, to sign a judgment and issue an execution without even issuing a writ, was first invented, does not appear, but it has now become one of the most usual collateral securities on loans of money." It is further said, with reference to the form of the warrant of attorney, that " it need not in strictness be under seal, though usually so, in order to authorize the release of errors."

But it will, perhaps, be more satisfactory to show that a practice, similar to that prevailing in Pennsylvania, obtained in our own state from the earliest times to the adoption of the Code in 1848. The earliest allusion to this practice occurs in chapter 15 of the Colonial Laws of 1774, under the title : " An act for the better discovery of judgments in the courts of record in this colony," wherein it is provided that the clerks of courts of record, within six days after every term or court, shall enter in an alphabetical docket the name of the party against whom the judgment is entered, with a particular " of all judgments by confession, *non sum informatus*, or *nil dicet*, etc." By chapter 104 of the Laws of 1801, it was provided " that no judgment·shall be entered upon any bond or contract in writing, hereafter to be made, upon the confession of any attorney, by virtue of any authority whatever contained in the same instrument   *   *   *   with such bond or contract, and no judgment shall be entered upon any confession taken out of court before any judge, etc."

By section 8 of chapter 259 of the Laws of 1818, it was provided that a confession of judgment by bond and warrant of attorney should contain a particular statement and specification of the nature and consideration of the debt or demand and in default thereof the judgment should be adjudged fraudulent as to other *bona fide* creditors. Certain other provisions, in relation to warrants of attorney, not material to be particularly noticed, are found in chapter 48 of the Laws of 1813, and chapter 50 of the same year, and other years previous to 1828.

By section 10, article 1, title 4, chapter 6 of the Revised Statutes it was provided : " That judgments may be entered in

the Supreme Court, or in any Court of Common Pleas, in vacation or in term, upon a plea of confession signed by an attorney of such court; although there be no writ then pending between the parties, if the following provisions be complied with, and not otherwise : First. The authority of confessing such judgment shall be in some proper instrument, distinct from that containing the bond, contract or other evidence of the demand, for which such judgment is confessed. Second. Such authority shall be produced to the officer signing such judgment and shall be filed with the clerk of the court in which the judgment shall be entered at the time of filing and entering such judgment." It was also provided by section 4, title 3 of the same chapter, that in cases of an action upon a written instrument for the payment of money, where the defendant had suffered default or upon confession, that a reference might be had to the clerk to assess damages, and in assessing such damages the production to the clerk of the instrument, set forth in the declaration, shall be sufficient evidence of the same without any other proof.

The practice under these statutes is described by Graham, in his work on Practice, as follows : " A warrant of attorney is a written authority to the attorney to whom it is directed, or, as is more generally the case, to any attorney of the Supreme Court or, any other court of record, to appear for the party executing it and receive a declaration for him in an action at the suit of a person therein mentioned, and thereupon to confess the same or to suffer judgment to pass by default; it also, in general, contains a release of errors. It must be subscribed by the defendant and must be in some proper instrument (usually by deed in the presence of a subscribing witness, although this is not necessary), distinct from that containing the bond, contract or other evidence of the demand for which the judgment is confessed, and it must be produced to the officer signing the judgment and filed with the clerk of the court in which the judgment is entered at the time of the filing and docketing of such judgment. * * * Within a year and a day from the date of the warrant of attorney judgment may

be entered up as of course, without the leave of court."
(Graham's Practice, chap. 4, p. 467 *et seq.*)

I have been unable to find any rule or precedent in this
country or England requiring a power of attorney to confess
judgment, to be acknowledged, or even to be attested by a
subscribing witness. The Code of Procedure effected a change
in the mode of procedure and reinstated the practice of com-
bining in one instrument the authority for a judgment and the
proof of debt, and described the process as judgment by con-
fession. By that Code a party could confess judgment either
for money due or to become due, or to secure a person for
contingent liability on behalf of the defendant. To do this
the defendant was required only to make a statement in writing,
signed and verified by him, naming the amount for which
judgment might be entered, and authorizing its entry and
stating, concisely, the facts out of which the liability arose.
Upon filing this statement with the clerk of the court, he was
required to enter the judgment for the amount confessed, with
five dollars costs and disbursements, and the statement and
affidavit, with judgment indorsed thereon, became the judg-
ment-roll.

It is thus apparent that under the practice now existing in
this state judgments are daily entered in our courts without
process, declaration or appearance, and without the interven-
tion of the court or even an attorney and without proof of any
authority from the defendant except that inferred from his
signature to the statement.

This brief historical statement of the condition of the law
on the subject in this state, will have failed in its purpose
if it does not show that heretofore the filing in court of a
warrant of attorney, authorizing the confession of a particular
judgment, gave the court jurisdiction over the person of the
party executing it to adjudicate according to its regular prac-
tice upon the subject embraced in the warrant. When the
warrant is for the confession of judgment for a specific sum,
it is, of course, unnecessary to prove the nature, existence or
amount of the debt upon the assessment of damages, as the

express authority of the warrant supplies the place of such proof.

And, as it is held in Pennsylvania, on a warrant authorizing any attorney to confess judgment, the prothonotary may properly be considered such attorney. There would seem to be no valid reason why this should not be so, as the warrant authorizes the plaintiff to select any attorney he may desire, and the exercise of that authority is, at the most, a mere matter of form. Judgment is entered there as here, on the request of the plaintiff, by the clerk, without the intervention of the judge, in term time or vacation, and in case the debt is not then due, execution is stayed until it matures. The only material difference existing between the present practice in this state and in Pennsylvania in relation to judgments by confession is, that here a defendant is required to verify his statement as to the nature and circumstances of the indebtedness. This requirement has no relation, however, to the jurisdiction of the court or the authority of the clerk to enter judgment, as its only purpose has frequently been declared to be to protect creditors from judgments fraudulently confessed by an insolvent debtor. (*Shelden* v. *Stryker*, 34 Barb. 121; *Chappel* v. *Chappel*, 12 N. Y. 219; *Dunham* v. *Waterman*, 17 id. 9.)

In the latter case, Judge SELDEN says: "The object of the statute being to protect the creditors of the party confessing the judgment against fraud, its violation forms a proper subject of equitable jurisdiction." In the case of *Sheldon* v. *Stryker* (*supra*), Judge EMOTT says, in view of the principles declared in the cases of *Chappell* and *Dunham*, above cited, that such judgment is not "an absolute nullity if it is valid as to any person. It is valid as to the defendant in the judgment, for he cannot even move to set it aside, and such judgments are always amended as to him." It was, therefore, held that a judgment entered by confession, although it be not confessed in conformity with the provisions of the Code, is not absolutely void, but is voidable at the instance of certain creditors only.

In view of these decisions it would be idle to contend that a defendant can impeach a judgment entered upon a warrant of attorney, signed by him and in conformity thereto, whether his statement be verified or acknowledged or not. It is not easy to point out any difference in principle between the practice now prevailing in this state and that pursued in Pennsylvania. Given a valid warrant of attorney in either state, the rest is matter of form, to be regulated by the laws of the respective states where the cause of action arises.

The judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.