Breitel, J.
Plaintiff, Atlas Credit Corporation, sues in these consolidated actions to enforce two Pennsylvania judgments obtained pro confesso under a cognovit or warrant of attorney. Atlas moved for summary judgment on the ground that the judgments were entitled to full faith and credit in New York. The Supreme Court denied the motion, finding that an issue of fact was presented as to plaintiff’s authority to enter the *222 cognovit judgments. The Appellate Division, First Department, unanimously reversed in a Per Curiam opinion, holding that the Pennsylvania judgments “ are not subject to collateral attack ” (31 A D 2d 532). Defendants have appealed.
The cognovit judgments were entered, without notice, under a warrant of attorney contained in a guarantee agreement which provided that, "in the event of any default hereunder, the undersigned, and each of them hereby empowers any Attorney of any Court of record within the United States of America, or elsewhere to appear for them, and with or without a declaration filed, confess judgment or judgments against them in favor of Atlas * * * waiving all errors, defects and imperfections, whatsoever of a procedural nature, in the entering of said judgments or any process or proceedings relating thereto.”
The primary issue is whether a cognovit judgment, entered without notice in a sister State, pursuant to an unlimited warrant of attorney, is a judicial proceeding within the purview of the full faith and credit clause (U. S. Const., art IV, § 1; U. S. Code, tit. 28, § 1738). If such a cognovit comes within the purview of the clause, the second issue is whether ■such an unlimited warrant of attorney so offends due process as to deprive the rendering State of judicial power to issue a judgment cognizable under the full faith and credit clause.
It is concluded that cognovit judgments are not judicial proceedings within the intendment of the full faith and credit clause, but rather a form of debt instrument given the sanctions of a judgment without the minimal judicial process associated with a judgment. It is further concluded that, in ■any event, the warrant of attorney, pursuant to which the cognovit judgments were taken, violates due process because of its unlimited authority to enter a judgment anywhere in the world. Since the warrant of attorney was ineffective to give the Pennsylvania court jurisdiction, the cognovit judgments are not entitled to full faith and credit.
Defendants, Ivan Ezrine and Sarah Ezrine, together with others not parties to these actions, executed an agreement guaranteeing the mortgage indebtedness of a Pennsylvania corporation. By express provision Pennsylvania law was made applicable to the guarantee agreement. The facts averred in the affidavits on the motion for summary judgment have been *223 succinctly stated by Mr. Justice Tierney, at Special Term, as follows:
“Upon a claimed default in the mortgage in December, 1963, a judgment was entered against defendant Ivan A. Ezrine for the sum of $690,253.20 under that cognovit in the Court of Common Pleas of Bucks County on December 24, 1963 by an attorney presumably designated by plaintiff under authority of the warrant of attorney, and without service upon, or notice to, ■the defendant. Upon a further claimed default in the mortgage in June, 1964, a similar cognovit judgment for the sum of $628,084 was entered against defendant Sarah Ezrine (the former’s wife) in the Court of Common Pleas of Philadelphia County on June 25, 1964 by another attorney designated by plaintiff under authority of that warrant, and again without service upon, or notice to, the defendant. In referring to the defaults in the underlying mortgage as ‘ claimed ’, we merely make note that the facts supporting the averments of default filed with the cognovit on such occasions are, in the words of plaintiff’s counsel, 'ascertainable only from evidence not of record. ’ Under the laws of the Commonwealth of Pennsylvania such judgments were valid. They would be invalid here (see CPLR 3218).
“ It appears that in June, 1964, plaintiff instigated summary proceedings to foreclose the security held for the debt guaranteed by defendant guarantors. On July 28, 1964, the Sheriff of Bucks County levied upon certain personal property of one of the guarantors (Kemline Industries, Inc.) and sold that property to plaintiff for $70,001. It further appears that on October 9, 1964, the Sheriff of that county foreclosed certain real estate and machinery of the mortgagor in default and sold this property at public sale to plaintiff for $11,704. Thereafter, on September 29, 1965, the deed for the property was delivered by the Sheriff to an assignee of the vendee (which is alleged to be an affiliate of plaintiff) for an amount not clearly indicated in the papers before the court. Neither of the afore-mentioned levies and sales were on notice to either of the defendants herein.
“Under Pennsylvania law, whenever any real property is sold to the plaintiff in execution proceedings for a price insufficient to satisfy the amount of the judgment, interest and costs, *224 the plaintiff, if he seeks to recover the balance due on such judgment, must petition the court to fix the fair market value of the property within six months from the sale (Pa. Stat., tit. 12, §§ 2621.1, 2621.4). The date when the ‘ sale ’ of such real property occurs is (in Pennsylvania) the date of delivery of the Sheriff’s deed (see Max Realty Improvement Co. v. Boulevard Center, 398 Pa. 1). Nearly two years after plaintiff 'bid in' at the public sale, but within six months of the Sheriff’s delivery of the deed to plaintiff’s assignee, a petition was filed by plaintiff in the Bucks County Court of Common Pleas and a hearing was set by the court for March 11, 1966.
“ Defendants, being nonresidents of Pennsylvania, were not subject to personal service in accordance with the Pennsylvania statute governing jurisdiction in ‘ fair value ’ proceedings (Pa. Stat., tit. 12, § 2621.4, subds. [a], [b]). Accordingly, the court directed service by publication once a week, for two successive weeks, in three Bucks County newspapers, and that copies of the notice, together with a copy of the petition filed, be sent by certified mail to defendants’ residence in New York City. It appears that plaintiff effected service in the manner prescribed by the order and that defendants were apprised of the proceeding.
"At the hearing on March 11, 1966, at which defendant Ivan A. Ezrine apparently appeared by attorney, the fair market value of the real properties was fixed at $350,000. There was some dispute, however, as to the amount realized by plaintiff on its assignment of the property. Thereafter, the value determined was credited on March 26 and 29, 1966, against the judgments entered against defendants Ivan A. Ezrine and Sarah Ezrine, respectively. Both reassessed judgments are alleged to remain completely unsatisfied as of the present date so that plaintiff is allegedly owed by defendants Ezrine, jointly and severally, the sum of $237,369.32 with interest from March, 1966.
“ On April 5, 1966, defendant Ivan A. Ezrine appeared specially in the Court of Common Pleas of Bucks County and moved to open the judgment entered March 11, 1966. The allegations made therein by said defendant are essentially those interposed by both defendants in opposition to the instant motion. The petition to open the judgment was denied on July 6,1967 on the *225 grounds that plaintiff’s petition to fix fair market value was timely made; that jurisdiction was properly obtained; that said defendant lacked standing to contest the amount of the fair market value alleged in plaintiff’s petition; and, in any event, that the $350,000 appraisal was a realistic one.”
Cognovit judgments or judgments by confession, not to be confused with the somewhat restricted statutory judgments by confession permitted in most States, including New York, were familiar to the common law. They were of two types. Those entered on the regular cognovit actionem or written confession after the regular commencement of the action; and those entered upon a warrant of attorney to confess judgment without the institution of an action (1 Black, Judgments, § 50; 3 Freeman, Judgments, § 1302; Note, Confessions of Judgment, 102 U. of Pa. L. Rev. 524, 525-526; Hunter, The Warrant of Attorney to Confess Judgment, 8 Ohio St. L.J. 1; 49 C. J. S., Judgments, §§ 13A-137).
The cognovit judgments involved in this case were entered on a warrant of attorney without the institution of an action. By the practice at the common law a warrant of attorney may be incorporated in a bond, note, or other instrument evidencing the obligation (Chappel v. Chappel, 12 N. Y. 215, 218). The warrant, which may or may not be conditioned on the obligor’s default, empowers any attorney, usually unknown to the obligor, to enter his appearance in a court of record, to waive process, and consent to the entry of judgment against the obligor. This procedure allowing confession in advance of the commencement of an action is used as a security device.
Cognovit judgments entered on warrants of attorney, if valid where rendered, have been held entitled to full faith and credit in the forum State (Teel v. Yost, 128 N. Y. 387; Ann., Warrant of Attorney — Foreign Judgment, 39 ALR 2d 1232).
However, as early as 1828, judgments entered on warrants of attorney were characterized as “ the loosest way of binding a man’s property that ever was devised in any civilized country ” (Alderman v. Diamet, 7 N. J. L. 197, 198). General dissatisfaction with warrants of attorney and cognovit judgments has prompted severe regulation or prohibition in most of the States. According to a 1961 survey, 23 States, including New York, *226 have placed varying procedural limitations on judgments by confession (Hopson, Cognovit Judgments, 29 U. of Chi. L. Rev. 111, 126, n. 92).
For example, in 1848 New York abolished the warrant of attorney (Code of Pro. [Field Code, 1848], §§ 335-337). The 1848 enactment required that the obligor, himself, sign an affidavit in which is stated the sum for which judgment may be entered and the relevant facts out of which the liability arose. No longer could an obligor confess judgment in New York by merely authorizing a third party to act under a warrant of attorney. There was no substantial change in this procedure until 1915 when an amendment to the Code of Civil Procedure (1877) required that a judgment by confession be filed with the clerk of the county in which the obligor resided at the time he executed the affidavit (L. 1915, ch. 639).
With the enactment of the Civil Practice Law and Buies (1962) there came a new requirement that the obligor state in the affidavit “ the county where [he] resides, or, if he is a nonresident, the county in which entry is authorized ” (CPLR 3218, subd. [a], par. 1). The purpose of this change was “ so that proper county for entry” of the judgment wiE be ascertainable from the affidavit (5th Beport, Advisory Comm, on Prac. and Pro., N. Y. Legis. Doc., 1961, No. 15, p. 503). Although the change was primarily to protect creditors, it affords some minimal protection to the obligor in that he may be able to ascertain whether judgment has been confessed against him.
The New York type procedure for confessing judgment has been adopted by “ about one-fourth of the states ” (1st Report, Advisory Comm, on Prac. and Pro., N. Y. Legis. Doc., 1957, No. 6[b], p. 108). Seventeen States have rejected procedural regulation and prohibit any agreement to confess judgment executed before commencement of the action (Note, 102 U. of Pa. L. Rev., supra, at p. 524, n. 5).
This nearly universal distaste for cognovit judgments entered on warrants of attorney is grounded in the feeling that such judgments “ are not in accordance with ‘ fundamental principles of justice and fair play ’ ” (Paulsen, Enforcing the Money Judgment of a Sister State, 42 Iowa L. Rev. 202, 210). The cognovit judgment is usually entered with great speed upon the obligor’s default, if so conditioned. If the warrant of attor *227 ney is not so conditioned, it may be entered, without default, shortly after the instrument evidencing the liability is signed, although the right to enforce will remain conditioned on default.
When contrasted with default or consent judgments, the harshness and unjudicial-like procedure of the cognovit judgment is exposed as egregious. Prior to rendition of a default judgment, process must have been served so that the debtor is made aware of the pending action, and the plaintiff must have filed a complaint pleading a good cause of action (49 C. J. S., Judgments, § 193). The contrast is even greater with respect to consent judgments. A judgment by consent as an agreement between the parties after the commencement of an action upon the terms of the judgment is a product of contemporaneous bilateral action (3 Freeman, op. cit., § 1349).
It is interesting to note that, in England, “ [i]t was formerly a common practice for judgment to be entered up upon a warrant of attorney to confess judgment, but the practice is now almost obsolete” (19 Halsbury’s Laws of England [2d ed., 1935], Judgments and Orders, par. 526; compare 22 Halsbury’s Laws of England [3d ed., 1958], Judgments and Orders, where reference to such judgments is omitted).
The theoretical basis for all judgments by confession is that a defendant may consent in advance to jurisdiction of a “ given court ” (National Rental v. Szukhent, 375 U. S. 311; see, also, Gilbert v. Burnstine, 255 N. Y. 348). WTien this consent is coupled with a warrant of attorney authorizing an attorney to appear for him and confess judgment, he not only invests jurisdiction in the court but makes it unnecessary to provide him with notice that the suit had been brought (Restatement, Judgments, § 6, Comment e; § 18; Restatement, Conflict of Laws, §§ 75, 81; Restatement, 2d, Conflict of Laws [P.O.D., Part I, May 2, 1967], § 25, Comment g; § 32, Comments h, i).
The only two United States Supreme Court cases involving cognovit judgments have denied them full faith and credit because of lack of jurisdiction in the rendering State due to a failure to observe strictly the terms of the warrants of attorney. Consequently, these cases stand only for the proposition that a warrant of attorney should be strictly construed (National Exch. Bank v. Wiley, 195 U. S. 257; Grover & Baker Mach. Co. v. Radcliffe, 137 U. S. 287).
*228 In National Exch. Bank v. Wiley (supra), the court held that Nebraska was not required to give full faith and credit to an Ohio cognovit judgment. The warrant of attorney had authorized confession of judgment only in favor of the “ holder ” of the note. Since the plaintiff was not actually the ‘ ‘ holder ’ ’ of the note but an assignee without ownership there was no authority for the Ohio court to have entered judgment. The judgment was, "in legal effect, a personal judgment without service of process upon the defendants and without their appearance in person or by an authorized attorney. The proceedings were wanting in due process of law ” (id., at p. 270).
In Grover & Baker Mach. Co. v. Radcliffe (supra), a note authorized “ any attorney of any court of record in the State of New York or any other State to confess judgment ”. The judgment by confession was entered in Pennsylvania by a prothonotary who had power to do so under Pennsylvania law. The court held that since the debtor had authorized only an attorney to confess judgment the judgment was invalid. And even though Pennsylvania law provides for confession by a prothonotary, the debtor could not be held to know the laws of all the States and “ had a right to insist upon the letter of the authority conferred ” (id., at p. 299).
Nine months after the Grover case, this court held that a cognovit judgment entered in and valid in Pennsylvania is entitled to full faith and credit in New York (Teel v. Yost, supra). This holding was followed (e.g. Mayer v. Raudenbush, 154 App. Div. 937, affd. 217 N. Y. 633; Albert Bldg. & Loan, Assn. v. Newman, 130 Misc. 624). But at least one court held that the validity of a cognovit judgment is to be determined by the law of the residence of the obligor at the time of execution of the warrant of attorney (Baldwin Bldg. & Loan Assn. v. Klein, 136 Misc. 752; see, also, Bland v. White, 138 Misc. 715). The case was later overruled (Morris v. Douglass, 237 App. Div. 747).
The question, then, testing the continued viability of the rule in Teel v. Yost (supra), is whether cognovit judgments are only nominally judgments, and thus not entitled to full faith and credit.
Of course, a judgment is entitled to full faith and credit if valid where rendered (see, generally, Paulsen, op. cit. [42 Iowa L. Rev. 202]; Page, Full Faith and Credit: The Discarded *229 Constitutional Provision, [1948] Wis. L. Rev., 265; Sumner, Full Faith and Credit for Judicial Proceedings, 2 U. C. L. A. L. Rev. 441). It was early held, however, that full faith and credit need not he accorded to all judgments, hut only to those conclusive in the forum State and not merely prima facie evidence of the matter decided (Mills v. Duryee, 7 Cranch [11 U. S.] 481). Moreover, not all judgments consistent with due process are within the mandate of the full faith and credit clause (e.g., Wisconsin v. Pelican Ins. Co., 127 U. S. 265 [penalty judgments]; cf. Huntington v. Attrill, 146 U. S. 657).
The application of the doctrine and its syllogism depends upon whether a judgment embraces everything called a judgment, or whether the nomenclature must also represent certain mínimums of judicial process before the product is entitled to full faith and credit as a judgment. It should be evident that if the document sought to be enforced is not actually a judgment but a paper merely denominated as such, the full faith and credit syllogism is inapplicable.
An analysis of the language of the constitutional mandate reveals that the term “ judgment ” holds no talismanic significance. Indeed, although it is traditional to refer to a “ judgment ” when discussing questions of full faith and credit, the word “ judgment ” is not used in the clause itself. As stated by Mr. Justice Jackson, in a different context: “ Neither the Full Faith and Credit Clause of the Constitution nor the Act of Congress implementing it says anything about final judgments, or for that matter, about any judgments. Both require that full faith and credit be given to ‘ judicial proceedings ’ without limitation as to finality ” (Barber v. Barber, 323 U. S. 77, 87 [concurring opn.]).
The task, then, is to identify the underlying elements of a judgment that require that it be afforded full faith and credit.
According to one commentator, “ a judicial proceeding was a court proceeding ” (Sumner, op. cit., at p. 445). However, since Magnolia Petroleum Co. v. Hunt (320 U. S. 430) held that an administrative determination is entitled to full faith and credit, the phrase in the constitutional clause ‘ ‘ would best be classified [today] as comprehending those formal decisions rendered in controversies where the parties have been given notice of the *230 proceedings with an opportunity to be heard ” (Sumner, op. cit., at p. 446) „
The proceedings to enter a cognovit judgment on warrant of attorney are before a prothonotary or clerk of the court (Pa. Stat., Rules Civ. Pro., rule 76 [Vernon’s ed., 1953]). His duties are purely ministerial (Pa. Stat., tit. 12, § 739 [Vernon’s ed., 1953] ; see, generally, 20 Pa. Law Ency., Judgments, § 33). The proceedings do not involve the exercise of discretion or judgment usually associated with judicial proceedings.
If definitions are of any value, and they are, a judgment has been defined as "the determination * * * pronounced by a competent judge or court, as the result of an action or proceeding instituted in such court, affirming that, upon the matters submitted for its decision, a legal liability does or does not exist ” (1 Black, Judgments, § 1, p. 2). In cognovit judgments there are, of course, no controversies or matters submitted for judicial resolution.
Moreover, the cognovit judgment, while not itself a contract, is merely “ the act of the law, invoked by the parties, in executing [their] agreement ” (1 Black, op. cit., § 10, p. 16). Such a judgment provides the court’s imprimatur on a purely personal act.
Thus, analytically it is not correct to characterize a cognovit judgment as a judgment in fact. It is merely called such. It never evidences any judicial act. If this analysis be valid, then surely a cognovit judgment entered on a warrant of attorney is not entitled to full faith and credit as a judicial proceeding.
Since recognition of a cognovit judgment is not mandated by full faith and credit, local policy, if inimical to judgments by confession entered on warrants of attorney, may bar recognition and enforcement. Fauntleroy v. Lum (210 U. S. 230) does not dictate a contrary result by its holding that local policy against the underlying cause of action is not a defense to a valid sister State judgment. Its rule applies only to constitutionally protected judicial records or proceedings.
It is evident that the procedure by which these cognovit judgments were obtained is repugnant to New York’s policy as it has been expressed by statute for over 100 years. There has been no acknowledgement by the obligor of the facts constituting the underlying liability. Furthermore, the obligor him *231 self did not confess judgment but rather authorized some unknown third person to do so through the warrant of attorney. Therefore, cognovit judgments may not he enforced in the courts of this State.
Assuming, however, that cognovit judgments are entitled to full faith and credit, inquiry may be made as to whether the rendering court had jurisdiction (Jackson, Full Faith and Credit, 45 Col. L. Rev. 1, 8). Recovery in the forum on a sister State judgment "can be resisted only on the grounds that the court which rendered it was without jurisdiction ” (Milwaukee County v. White Co., 298 U. S. 268, 275-276). Since there has been no prior adjudication of this question, it is open in these actions (Adam v. Saenger, 303 U. S. 59, 62).
Jurisdiction to render these judgments, if there is any, must be based on the consent to jurisdiction stated in the warrant of attorney. The warrant provided that any Attorney of any Court of record within the United States of America, or elsewhere is to appear for them ”. This authority is so broad that, as was said in 1881 by the Tennessee Supreme Court: “ The power of attorney is so general as to apply to and empower any attorney in the world, of any court, to confess judgment. * ® ® [T]he judgment * * * could * * * properly have been confessed in China or Japan. We think the power of attorney * * * is void for its comprehensive uncertainty ” (Carlin v. Taylor, 75 Tenn. 666, 668; but see Pirie v. H. Stern, Jr. & Bro. Co., 97 Wis. 150, and Colt Co. v. Wright, 162 Md. 387).
In National Rental v. Szukhent (375 U. S. 311, supra) the court stated, "it is settled * * * that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether” (id., at pp. 315-316). What is significant in this language is the reference to "a given court.” (See, also, Restatement, Judgments, supra, § 18, Comment e [“ designated State ”]; Restatement, 2d, Conflict of Laws (P.O.D., Part I, supra, § 32, Comment g ["designated State ”]).
It is this concept of particularity in the selection of a jurisdiction that is of vital importance. And this is especially so in reference to cognovit judgments on warrants of attorney, since, *232 as stated by the Pennsylvania Supreme Court: “ A warrant of attorney authorizing judgment is perhaps the most powerful and drastic document known to civil law. The signer deprives himself of every defense and every delay of execution, he waives exemption of personal property from levy and sale * * * he places his cause in the hands of a hostile defender. The signing of a warrant of attorney is equivalent to a warrior of old entering a combat by discarding his shield and breaking his sword” (Cutler Corp. v. Latshaw, 374 Pa. 1, 4). The procedural remedy is so drastic that to honor consent to entry of a judgment anywhere in the world, in advance of commencement of an action, and coupled with a waiver of notice, is not in accordance with fundamental principles of justice and fair play. The mere fact that judgments by confession have ancient origins does not establish reasonableness under current standards. Today, there is a “ near unanimous feeling of distaste for this time-honored method of obtaining jurisdiction” (Hopson, op. cit. [29 U. of Chi. L. Rev.], at p. 131).
Although Mullane v. Central Hanover Trust Co. (339 U. S. 306) involved the question of notice, which admittedly can be waived, the case suggests that due process requires certain mínimums based on modern concepts of reasonableness. Certainly, one minimum procedural guarantee should be that a person cannot consent to the entry of judgment against him anywhere without service of process (cf. Shuchman, Confession of Judgment, 36 Notre Dame Lawyer, 461, 473). Indeed, one commentator suggests that cognovit judgments may be violative of due process for lack of notice (Hopson, op. cit., at pp. 141-143; see Note, Developments in the Law—■ State-Court Jurisdiction, 73 Harv. L. Rev. 909, 944; cf. Von Mehren and Trautman, Law of Multistate Problems, p. 815; but see Turner v. Alton Banking & Trust Co., 181 F. 2d 899, cert. den. 340 U. S. 833, reh. den. 340 U. S. 885).
It is therefore concluded that a warrant of attorney which permits entry of a judgment by confession anywhere in the world without notice violates due process and deprives the rendering court of jurisdiction. Any judgment entered thereon whether against New York residents or others, although enforced by the rendering State, may not be recognized or enforced in the courts of this State. Thus enforcement of these *233 cognovit judgments is barred not only because they are not entitled to full faith and credit and thus must yield to New York’s strong public policy, but also because they are violative of due process, and, therefore, unenforceable under the Federal Constitution. Teel v. Yost (supra), holding to the contrary, should be overruled.
Because the Pennsylvania judgments are not entitled to enforcement in this State the motion for summary judgment should be denied and the complaint dismissed for failure to state a cause of action (CPLR 3211, subd. [a], par. 7). No action may be maintained on these judgments in this State. However, a motion for summary judgment “searches” the record, and it is apparent that the pleadings give adequate notice to the defendant of the underlying cause of action. On a motion for summary judgment "The court may make any order as may aid in the disposition of the action ” (CPLR 3212, subd. [g]; see CPLR 104). Therefore, it is in the interests of justice that the cause of action be dismissed with leave to plaintiff to replead (cf. CPLB 3211, subd. [e]).
Accordingly, the order of the Appellate Division should be reversed with costs and the complaint dismissed, with leave to plaintiff to replead, if so advised.