[S.F. No. 23604. Apr. 24, 1978.]

EVA ISBELL et al., Plaintiffs and Appellants, v.
COUNTY OF SONOMA et al., Defendants and Respondents.

62

64

## COUNSEL

David C. Lewis, William C. McNeill and Richard M. Pearl for Plaintiffs and Appellants.

James P. Botz, County Counsel, and Caroline Kerl, Deputy County Counsel, for Defendants and Respondents.

Michael E. Barber as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

**TOBRINER, J.—** Under the due process clause of the federal Constitution, a court may enter judgment against a defendant only if the record shows that either (a) the defendant has received notice and an opportunity to be heard, or (b) the defendant has voluntarily, knowingly and intelligently waived his constitutional rights. The California confession of judgment statutes (Code Civ. Proc., §§ 1132-1134), however, direct the court clerk in nonconsumer cases to enter judgment on the basis of the signed confession without notice and hearing. We shall explain that a signed confession of judgment is not adequate proof that the debtor has validly waived his due process rights; rather than emerging from negotiations between knowledgeable bargainers, such confessions are most often executed by debtors who have little under-

standing of the significance of their waiver and little choice in the matter. Because the California statutes provide insufficient safeguards to assure that the debtor in fact executed a voluntary, knowing, and intelligent waiver, and because the debtor's opportunity to seek post-judgment relief does not cure the unconstitutionality of a judgment entered without a valid waiver, we conclude that the confession of judgment procedure established in sections 1132 through 1134 violates the due process clause of the Fourteenth Amendment.

### 1. *Summary of facts.*

█ Although confessions of judgment are usually employed to enforce claims of private creditors, the instant action presents perhaps a more doubtful usage. In 1966 and 1967, each of the plaintiffs was a Sonoma County welfare recipient.[1] Plaintiff Isbell pleaded guilty to welfare fraud and was sentenced to 30 days in jail. Because the court did not order restitution, a county representative visited Isbell at the jail on January 27, 1967, and induced her to execute a confession of judgment for the alleged overpayment, $596.98 "plus medical to be determined." The county filed this document with the clerk of the municipal court, which then issued a judgment against Isbell. The county recorded an abstract of the judgment; thus when Isbell purchased a house in 1974, the judgment became a lien on that realty.

Although plaintiffs Clevie and Omega Pearson were not charged with a criminal offense, the county claimed their alleged misuse of trust funds rendered such funds additional income to the Pearsons, and thus that the Pearsons had received excess welfare payments. On February 8, 1966, the Pearsons, at the behest of a county representative, executed a confession of judgment for $193, the amount of the alleged overpayment.[2] The county filed this document with the municipal court clerk,

[1] The parties submitted the case for decision upon stipulated statements pursuant to Code of Civil Procedure section 1138. This section provides that "Parties to a question in difference, which might be the subject of a civil action, may, without action, agree upon a case containing the facts upon which the controversy depends, and present a submission of the same to any Court which would have jurisdiction if an action had been brought. . . . The Court must thereupon hear and determine the case, and render judgment thereon, as if an action were depending."

[2] Both Isbell and the Pearsons executed a confession of judgment form furnished by the County. This form provides: "I hereby confess judgment in favor of the County of Sonoma, the plaintiff above named, for the sum of $——, and authorize entry of judgment thereof against me. This judgment applies to any personal and real property I now own or may acquire. [¶] This confession of judgment is for a debt justly due from me to the said County of Sonoma, and arises upon the following facts: to wit _____."

who entered judgment for the confessed sum on February 16, 1966. The county subsequently recorded an abstract of the judgment and has attempted to collect the judgment debt.

Neither Isbell nor the Pearsons were advised by counsel before signing the confessions of judgment. The parties have stipulated that plaintiffs "are lay persons with no training or background in matters of law and have only a lay person's understanding of the legal consequences of a confession of judgment." The parties finally stipulated that "There is an actual and present controversy between plaintiffs and defendants. Plaintiffs contend that the California laws authorizing and governing confession of judgment are unconstitutional, but defendants deny and dispute this."

On the basis of the stipulated facts, without receiving additional evidence, the trial court entered a declaratory judgment holding that a confession of judgment obtained in conformity with Code of Civil Procedure sections 1132 to 1134 did not violate due process, and consequently that the judgments rendered to the county against plaintiffs are valid. Plaintiffs appeal from that judgment.

2. *A judgment based solely upon an executed confession is constitutionally defective because that confession is insufficient to demonstrate that the debtor has voluntarily, knowingly, and intelligently waived his due process rights.*

■ The striking feature of the confession of judgment at common law lies in its authorization for entry of final judgment against a debtor without notice, hearing, or opportunity to defend. As we explained in *Hulland* v. *State Bar* (1972) 8 Cal.3d 440, 449 [105 Cal.Rptr. 152, 503 P.2d 608]: "a confession of judgment . . . puts at the disposal of the creditor the most drastic of enforcement proceedings. [It] forecloses the presentation of any possible defense or controversy for judicial resolution; to the contrary it is a personal admission of a debt obligation upon which the court places its primatur." The New York Court of Appeals described confessed judgments as " 'the loosest way of binding a man's property that ever was devised in any civilized country.' " (*Atlas Credit Corporation* v. *Ezrine* (1969) 25 N.Y.2d 219 [303 N.Y.S.2d 382, 250 N.E.2d 474, 478], quoting *Alderman* v. *Diamet* (1828) 7 N.J.L. 197, 198.)

California's confession of judgment statutes, enacted in 1851 and codified in 1872, follow common law practice with the notable exception that they do not permit an attorney to confess judgment on behalf of the defendant. (See *Barnes* v. *Hilton* (1953) 118 Cal.App.2d 108, 110-111 [257 P.2d 98].) Code of Civil Procedure section 1132, subdivision (a), provides generally that "A judgment by confession may be entered without action either for money due or to become due, or to secure any person against contingent liability on behalf of the defendant, or both, in the manner prescribed by this chapter. Such judgment may be entered in any court having jurisdiction for like amounts." Section 1133 specifies that the confession must be in writing, verified by the defendant, and must state concisely the facts constituting the liability.[3] The creditor files the judgment with the court clerk, "who must endorse upon it, and enter a judgment of such court for the amount confessed" (Code Civ. Proc., § 1134).

In recent years the Legislature has enacted numerous statutes limiting the use of confessions of judgment. The Financial Code prohibits the use of confessions of judgment by industrial loan companies (§ 18673), licensees under the California small loan law (§ 24468), and licensees under the personal property broker law (§ 22467). Civil Code section 1689.12 voids any cognovit provision in a home solicitation contract.[4] Finally in 1975 the Legislature added subdivision (b) to Code of Civil Procedure section 1132, providing that in any sale or loan primarily for personal, family, or household use, the clerk may enter judgment on a confession only if an attorney independently representing the defendant certifies that he has advised the defendant with respect to the waiver of rights and defenses and has recommended the use of the confession of judgment procedure.

---

[3]Section 1133 reads as follows: "A statement in writing must be made, signed by the defendant, and verified by his oath, to the following effect:

"1. It must authorize the entry of judgment for a specified sum;

"2. If it be for money due, or to become due, it must state concisely the facts out of which it arose, and show that the sum confessed therefor is justly due, or to become due;

"3. If it be for the purpose of securing the plaintiff against a contingent liability, it must state concisely the facts constituting the liability, and show that the sum confessed therefor does not exceed the same."

[4]Civil Code section 1804.1 states that no retail installment sale contract may include "a power of attorney . . . to confess judgment"; section 2983.7 similarly provides that no automobile conditional sales contract may include "a power of attorney . ... to confess judgment." Since Code of Civil Procedure section 1132 does not permit confession of judgment by warrant of attorney in any case (see *Barnes* v. *Hilton, supra,* 118 Cal.App.2d 108, 110-111), it is unclear whether sections 1804.1 and 2983.7 impose any additional restrictions on the use of confessions of judgment.

■ Plaintiffs, welfare recipients charged with receipt of overpayments, derive no protection from any of the recent enactments banning or restricting the use of cognovit agreements. The present case falls under the provisions of Code of Civil Procedure sections 1132 through 1134, unaffected by the 1975 amendment. Because these provisions permitted entry of judgment against plaintiffs without a voluntary and knowing waiver, plaintiffs claim the statutes in question are unconstitutional.

■ It is settled constitutional law that "in every case involving a deprivation of property within the purview of the due process clause, the Constitution requires some form of notice and a hearing." (*Beaudreau* v. *Superior Court* (1975) 14 Cal.3d 448, 458 [121 Cal.Rptr. 585, 535 P.2d 713]; see *Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 313 [94 L.Ed. 865, 872-873, 70 S.Ct. 652].) Notice and hearing must always precede entry of a final judgment depriving one of property (see *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 333 [47 L.Ed.2d 18, 32, 96 S.Ct. 893]; *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 307 [138 Cal.Rptr. 53, 562 P.2d 1302]); indeed, except in extraordinary circumstances notice and hearing are required before even a temporary deprivation of property. (*Fuentes* v. *Shevin* (1972) 407 U.S. 67, 80-82 [32 L.Ed.2d 556, 569-571, 92 S.Ct. 1983]; *Brooks* v. *Small Claims Court* (1973) 8 Cal.3d 661 [105 Cal.Rptr. 785, 504 P.2d 1249].) A confession of judgment, as we have explained, purports to authorize entry of judgment without prior notice and hearing. Consequently all courts agree that a judgment entered pursuant to such a confession is constitutional only if the confession constitutes a *valid waiver* of the debtor's due process rights. (See *D. H. Overmyer Co.* v. *Frick Co.* (1972) 405 U.S. 174, 184-188 [31 L.Ed.2d 124, 133-136, 92 S.Ct. 775]; *Tunheim* v. *Bowman* (D.Nev. 1973) 366 F.Supp. 1392; *Scott* v. *Danaher* (N.D.Ill. 1972) 343 F.Supp. 1272; *Irmco Hotels Corp.* v. *Solomon* (1975) 27 Ill.App.3d 225 [326 N.E.2d 542].)

■ Since the relevant statutes direct the clerk to enter judgment upon the creditor's presentation of a verified confession, the crucial issue becomes whether that document itself demonstrates that the debtor has in fact made a voluntary, knowing, and intelligent waiver. ■ In resolving that issue, we are guided by well-established constitutional principles: that waiver of constitutional rights is not presumed (*D. H. Overmyer Co.* v. *Frick Co., supra,* 405 U.S. 174, 186 [31 L.Ed.2d 124,

134]; *Ohio Bell Tel. Co.* v. *Comm'n.* (1937) 301 U.S. 292, 307 [81 L.Ed. 1093, 1103, 57 S.Ct. 724]); on the contrary, " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights" (*Johnson* v. *Zerbst* (1938) 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357]; *Scott* v. *Danaher, supra,* 343 F.Supp. 1272, 1277; *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 274 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206].)

 We look first to the question whether the debtor's assent to the confession demonstrates the *voluntary* character of his waiver of due process rights. Cognovit clauses most commonly appear in form contracts dictated by the party with a bargaining advantage. (See 70 Colum.L.Rev. (1970) 1118, 1130-1131; see generally Hopson, *Cognovit Judgments: An Ignored Problem of Due Process and Full Faith and Credit* (1961) 29 U.Chi.L.Rev. 111, 138, fn. 166.) Thus when the United States Supreme Court in *D. H. Overmyer Co.* v. *Frick Co., supra,* 405 U.S. 174, held in the context of a cognovit agreement negotiated between equal bargainers that confessions of judgment were not per se unconstitutional, it added the following caveat: "Our holding ... is not controlling precedent for other facts of other cases. For example, where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the cognovit provision, other legal consequences may ensue." (405 U.S. at p. 188 [31 L.Ed.2d at p. 135].) In *Hulland* v. *State Bar, supra,* 8 Cal.3d 440, we observed that this caveat casts "serious doubt on the constitutionality ... of cognovit clauses contained in contracts of adhesion, in which there is great disparity in bargaining power and the debtor receives nothing for the cognovit provision." (8 Cal.3d at p. 450; see also *Blair* v. *Pitchess, supra,* 5 Cal.3d at p. 275.)

In *Blair* v. *Pitchess, supra,* 5 Cal.3d at page 275, we discussed an analogous issue involving the validity of a debtor's contractual waiver of his constitutional protection against warrantless entry to seize property claimed by the creditor under a conditional sales contract. Observing that "most of those contracts appear to be adhesion contracts, the terms of which are specified by the seller or lender," we concluded that "a consent obtained in such a contract of adhesion is ineffective to waive the constitutional protections. . . ." (Pp. 275-276.)

By parity of reasoning, the debtor's assent to a contract of adhesion with a cognovit clause, or to a confession of judgment form presented by the creditor, cannot operate as a valid waiver of constitutional rights. But

even if the terms of the confession are not dictated by the creditor, the drastic nature of the device—the debtor's advance waiver of all possible defenses and even the right to be notified of the existence of the proceeding—strongly suggests a substantial disparity in bargaining position and implies overreaching on the part of the creditor. Thus except in the rare case in which the cognovit agreement itself shows that it was a negotiated agreement between equal bargainers, as in *D. H. Overmyer Co.* v. *Frick Co., supra,* 405 U.S. 174, a court presented only with the verified confession of judgment cannot assume the voluntariness of any waiver of due process rights implicit in that confession.

The debtor's execution of the confession of judgment equally fails to establish a *knowing* and *intelligent* waiver of constitutional rights. Although the face of the document itself often will not reveal the debtor's lack of legal sophistication, historical experience shows that confessions of judgment are most frequently employed against those who are unaware of the significance of that procedure. (See *Swarb* v. *Lennox* (E.D.Pa. 1970) 314 F.Supp. 1091; Hopson, *op. cit. supra,* 29 U.Chi.L.Rev. 111.) Many courts and commentators have observed that persons who sign confessions of judgment often do not realize that they are not only waiving their rights to notice and hearing, but as well the opportunity of presenting any defense to the claim. (See *Virgin Islands National Bank* v. *Tropical Ventures, Inc.* (D.V.I. 1973) 358 F.Supp. 1203, 1206; *Scott* v. *Danaher, supra,* 343 F.Supp. 1272, 1278; *Osmond* v. *Spence* (D.Del. 1971) 327 F.Supp. 1349, 1359; Pyes, *Reappraisal of the Confession of Judgment Law* (1960) 48 Ill. Bar J. 764, 769.) Thus the debtor's signature on the confession of judgment creates no inference that the debtor knowingly and intelligently waived his due process rights.

Because of the high risk of an involuntary, unknowing and unintelligent waiver, we held in *Hulland* v. *State Bar, supra,* 8 Cal.3d 440, that an attorney could not use a confession of judgment to collect legal fees; we stated that the use of a confession of judgment "creates a situation in which the client's ignorance of legal matters makes it unlikely that he will understand the character and effect of the instrument." (8 Cal.3d at p. 450.) When the Legislature amended Code of Civil Procedure section 1132 to provide that in a consumer transaction the proposed judgment must be accompanied by the certificate of independent counsel that he has advised defendant of his rights and advised him to sign the confession, it also recognized that these requirements are impelled by predicates of due process of law. As the Attorney General explained, this amendment rests on the rationale that "confessions of judgment are

special cases" in which lay knowledge does not adequately ensure a knowing and voluntary waiver. (59 Cal.Ops.Atty.Gen. 432, 438 (1976).)

In sum, sad experience has shown that the confession of judgment procedure lends itself to overreaching, deception, and abuse. Such a confession cannot on its face represent a voluntary, knowing and intelligent waiver.

Defendants point out that some confessions may in fact evidence a voluntary, knowing, and intelligent waiver by the debtor; thus the sufficiency of a confession to justify entry of judgment, they argue, must be determined on a case by case basis. The California statutes, however, do not provide for a case by case determination of the validity of the debtor's waiver. Code of Civil Procedure sections 1133 and 1134 direct the court clerk to enter judgment upon all written confessions which state the amount due and the basis for the debt. ■ The clerk is not a judicial officer (*Lane* v. *Pellissier* (1929) 208 Cal. 590, 593 [283 P. 810]; *People* v. *Kuder* (1928) 90 Cal.App. 594, 600 [266 P. 337]); he has no authority to reject confessions on the ground that they do not adequately prove a constitutionally valid waiver (cf. *Oliphant* v. *Whitney* (1867) 34 Cal. 25, 27; *Rose* v. *Lelande* (1912) 20 Cal.App. 502, 503 [129 P. 599]). ■ In short, the California statutes do not permit a prejudgment judicial determination of the validity of the debtor's waiver, but require the clerk to enter judgment upon a document which is ordinarily insufficient to demonstrate a valid waiver. Thus a judgment entered pursuant to the California procedure is constitutionally defective.

3. *The debtor's opportunity to seek postjudgment relief does not cure the unconstitutionality of a judgment by confession entered without sufficient proof of a valid waiver of the debtor's due process rights.*

■ We reject defendants' contention that a debtor's opportunity to attack a confessed judgment by motion filed after entry of judgment is an adequate remedy.[5] In *Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 911 [132 Cal.Rptr. 405, 553 P.2d 565], we observed that "Few liberties in

---

[5]We distinguish *Mitchell* v. *W. T. Grant Co.* (1974) 416 U.S. 600 [40 L.Ed.2d 406, 94 S.Ct. 1895] and *Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803 [132 Cal.Rptr. 477, 553 P.2d 637]. Both decisions upheld the constitutionality of statutes permitting a *temporary* taking of specific property in which the creditor claimed an interest without prior notice and hearing. The confession of judgment statutes, in contrast, permit entry of a *final judgment,* pursuant to which the creditor can levy upon *any nonexempt property* of the debtor without notice or hearing or a knowing and intelligent waiver of that right.

America have been more zealously guarded than the right to protect one's property in a court of law. This nation has long realized that none of our freedoms would be secure if any person could be deprived of his possessions without an opportunity to defend them *'at a meaningful time and in a meaningful manner.'* " (Citing *Fuentes* v. *Shevin, supra,* 407 U.S. 67, 80 [32 L.Ed.2d 556, 570].) (Italics added.)

A postjudgment determination of the validity of the debtor's waiver is not a determination "at a meaningful time." Once judgment has entered, the damage is done; the debtor is now subject to an obligation imposed in violation of his due process rights, and the creditor can immediately employ legal process to enforce that obligation.[6] Thus as the court explained in *Osmond* v. *Spence, supra,* 359 F.Supp. 124, 127, unless the validity of the waiver is determined "before the judgment is entered, an alleged debtor will be deprived of his due process rights on every occasion when an effective waiver has not occurred."

California's confession of judgment statutes, moreover, do not even provide for a postjudgment determination of the validity of the waiver. The debtor's only remedies are (1) to move to set aside the judgment under Code of Civil Procedure section 473—a remedy available only if, despite the absence of notice, he learns of the judgment and files his motion within six months of entry of judgment—or (2) to act to set aside a judgment procured by extrinsic fraud (see Code Civ. Proc., § 473; *Olivera* v. *Grace* (1942) 19 Cal.2d 570, 575 [122 P.2d 564]). As we pointed out in *Kash Enterprises, Inc.* v. *City of Los Angeles, supra,* 19 Cal.3d 294, 309, "[n]ot one of the scores of recent procedural due process decisions . . . suggests that the availability of a collateral judicial remedy can sustain a . . . procedure" which provides for no judicial determination whatsoever, either before or after the taking.

Defendants do not take issue with the principles and the reasoning which lead us to conclude that a confessed judgment based solely upon the debtor's signature to a cognovit agreement is constitutionally defective, and that the debtor's opportunity to seek postjudgment relief does not cure that defect. Instead, defendants argue from precedent,

---

[6]*Osmond* v. *Spence* (D.Del. 1972) 359 F.Supp. 124; *Virgin Islands National Bank* v. *Tropical Ventures, Inc., supra,* 358 F.Supp. 1203. Courts in Illinois and Pennsylvania have reached a slightly different conclusion than stated in the text, holding that the debtor is entitled to a determination of the validity of the waiver before *execution* of judgment. (*Scott* v. *Danaher, supra,* 343 F.Supp. 1272; *Chittester* v. *LC-DC-F Employees of G. E. Fed. Cr. Un.* (W.D.Pa. 1974) 384 F.Supp. 475; *North Penn Consumer Discount Co.* v. *Shultz* (1977) — Pa.Super. — [378 A.2d 1275].)

contending that the United States Supreme Court decision in *D. H. Overmyer Co.* v. *Frick Co., supra,* 405 U.S. 174, definitely establishes the constitutionality of the challenged California confession of judgment procedure.

Although defendants seek to equate *Overmyer* and the instant matter, the cases are distinguishable in several relevant respects. First, the Ohio statutory procedure at issue in *Overmyer* provided a debtor with a number of procedural and substantive safeguards unavailable under California procedure. Thus, while in California a debtor receives no notice at the time the confession of judgment is entered so as to permit him to make a speedy attack on the judgment, the Ohio statutes required the court clerk to give a judgment debtor notice of the entry of the confessed judgment. (See 405 U.S. at p. 175, fn. 1 [31 L.Ed.2d at p. 128].) Moreover, whereas California procedure permits a postjudgment attack on a confession of judgment only upon specified procedural grounds, the Ohio procedure enabled a judgment debtor to overturn a confessed judgment whenever the debtor could show the existence of a valid defense on the merits. (See 405 U.S. at p. 188 [31 L.Ed.2d at pp. 135-136]; see also *Billingsley* v. *Lincoln National Bank* (1974) 271 Md. 683 [320 A.2d 34]; *Irmco Hotels Corp.* v. *Solomon, supra,* 326 N.Ed.2d 542.) Consequently, the statutory procedure upheld in *Overmyer* was not nearly as harsh in operation as the California procedure at issue here.

Second, and perhaps more significantly, the *Overmyer* decision nowhere addresses the issue, crucial to the present case, whether the Ohio statutes established a constitutionally adequate procedure for assuring that a valid waiver of constitutional rights had occurred. In *Overmyer* the judgment debtor did not attack the adequacy of the record, but instead broadly claimed that an individual could never validly waive all rights to notice and hearing through a confession of judgment agreement. The *Overmyer* decision went no further than to reject this broad proposition and to hold on the facts before it that D. H. Overmyer Co., a large corporation which entered into a negotiated cognovit agreement in return for valuable consideration, had "voluntarily, intelligently and knowingly" waived its constitutional rights. (405 U.S. at p. 187 [31 L.Ed.2d at p. 135]; see *Swarb* v. *Lennox,* 405 U.S. 191, 201-202 [31 L.Ed.2d 138, 146-147, 92 S.Ct. 767].)

Since it is axiomatic that "cases are not authority for propositions not considered therein" (*Worthley* v. *Worthley* (1955) 44 Cal.2d 465, 472 [283

P.2d 19]), we conclude that *Overmyer* did not resolve that a confession of judgment procedure which requires the entry of judgment without a sufficient showing of a valid waiver is consonant with due process. (See *Osmond* v. *Spence, supra,* 359 F.Supp. 124; *Virgin Islands National Bank* v. *Tropical Ventures, Inc., supra,* 358 F.Supp. 1203; cf. *Scott* v. *Danaher, supra,* 343 F.Supp. 1272; but see *Tunheim* v. *Bowman, supra,* 366 F.Supp. 1392; *Irmco Hotels Corp.* v. *Solomon, supra,* 326 N.E.2d 542; *Billingsley* v. *Lincoln National Bank, supra,* 320 A.2d 34.) *Overmyer* therefore does not conflict with our conclusion that the California confession of judgment procedure is constitutionally infirm.

4. *Our holding that the California confession of judgment procedure is constitutionally defective should be given limited retroactive effect.*

■ Having concluded that the California confession of judgment procedure is constitutionally defective, we hold that after this decision becomes final no court may enter a confessed judgment pursuant to that procedure.[7] ■ A question remains, however, as to the application of this decision to judgments entered prior to the finality of this opinion. ■ As we explained in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], no hard and fast rules determine the extent to which a decision is given retroactive effect; "determinations of this nature turn on considerations of fairness and public policy." (13 Cal.3d at p. 829.)

■ Such considerations of fairness and public policy militate against a fully retroactive application of the present decision. Although confessions of judgment have not found widespread use in California (see *Barnes* v. *Hilton, supra,* 118 Cal.App.2d 108, 111), judgments were entered pursuant to that procedure, some of venerable age. In many of such cases the debtor owed the debt; in some the creditor has probably by this date collected all or part of the judgment. Little would be gained, and much confusion engendered, by a decision which would automatically void all such judgments. (Cf. *In re Marriage of Brown* (1976) 15 Cal.3d 838, 850-851 [126 Cal.Rptr. 633, 544 P.2d 561].)

On the other hand, many of those existing judgments may well have been entered without a valid waiver of the debtor's constitutional rights; and in some cases the debtors, believing they have a defense to the

---

[7]Since the instant case does not involve a consumer transaction within the scope of Code of Civil Procedure section 1132, subdivision (b), we do not here decide the constitutionality of judgments entered pursuant to that provision.

underlying obligation, may seek to reopen those proceedings. We therefore believe that our decision should be given a limited retroactive application to permit any judgment debtor to apply for a hearing challenging the validity of the waiver in his confession of judgment. At such a hearing the creditor, who must overcome the presumption against waiver of constitutional rights, bears the burden of proving the validity of the waiver;[8] if he fails to sustain the burden the court must vacate the judgment.

██ Finally, as in *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804, we conclude that the litigants before the court should be given benefit of our decision holding a judgment based on a confession invalid, in order "to provide incentive in future cases for parties who may have occasion to raise 'issues involving renovation of unsound or outmoded legal doctrine.' " (13 Cal.3d at p. 830.)

The judgment is reversed and the cause remanded with directions to enter a declaratory judgment in favor of plaintiffs determining that the confession of judgment procedure of Code of Civil Procedure sections 1132, subdivision (a),1133, and 1134 does not conform to the due process standards of the Fourteenth Amendment to the United States Constitution, and further determining that the judgment entered against plaintiff Isbell on January 27, 1967 and the judgment entered against plaintiffs Pearson on February 16, 1966, are void.[9]

Bird, C. J., Mosk, J., and Thompson (Homer B.), J.,* concurred.

---

[8]Courts of other jurisdictions have disagreed as to whether the debtor or the creditor bears the burden of proof in a postjudgment hearing concerning the validity of the debtor's waiver. (Compare *Osmond* v. *Spence, supra,* 359 F.Supp. 124, 127 with *Virgin Islands National Bank* v. *Tropical Ventures, Inc., supra,* 358 F.Supp. 1203 and *Irmco Hotels Corp.* v. *Solomon, supra,* 326 N.E.2d 542.) We believe this issue was correctly resolved in the Court of Appeal opinion below, and therefore adopt that court's language, which stated that: "In *Blair* v. *Pitchess, supra,* 5 Cal.3d 258 at page 274, the Supreme Court held that 'Where government officials rely on consent to justify the lawfulness of a search, the burden is on them to show by clear and positive evidence that the consent was freely, voluntarily and knowledgeably given.' . . . Although *Blair* involved the waiver of Fourth Amendment rights, its rationale is nevertheless controlling here. Due process rights are no less fundamental than the Fourth Amendment protection against unreasonable searches and seizures, and the presumption against waiver is equally applicable to the constitutional guarantee of notice and hearing. Thus where a creditor relies upon waiver of due process rights, he should be charged with proving that the waiver was valid."

[9]We hold here only that sections 1132, subdivision (a), 1133, and 1134 of the Code of Civil Procedure enact an unconstitutional procedure. The validity of judgments entered pursuant to stipulation or agreement under the authority of other statutes or rules of court is not before us in the present case, and we do not imply that such judgments are void.

*Assigned by the Chairperson of the Judicial Council.

**RICHARDSON, J.**—I respectfully dissent. In its praiseworthy zeal to protect the unwary victims of standardized adhesion contracts containing confession of judgment provisions, the majority unnecessarily and improperly strikes down a major portion of California's confession of judgment statute (namely, Code Civ. Proc., §§ 1132, subd. (a), 1133, 1134). With all due deference, I suggest that in a situation calling for use of a surgeon's scalpel the majority reaches for a meat axe. The majority's holding of facial unconstitutionality conflicts with the latest expressions of the United States Supreme Court on the subject, and has the unfortunate (and wholly unnecessary) effect of invalidating even those confessions executed by willing and knowledgeable debtors for the purpose of avoiding unnecessary litigation over matters already in controversy. Because the confession procedure operates in an entirely proper fashion in such cases, and because the Legislature in 1975 has added adequate safeguards applicable to most adhesion-type contracts (see Code Civ. Proc., § 1132, subd. (b)), we should uphold the challenged legislation and require those debtors who may assert that their signatures were obtained improperly to raise the defense through appropriate postjudgment relief.

Initially, I stress that the case before us does not involve the typical, much-criticized, "cognovit note or agreement," of the sort contained in many adhesion-type contracts. As described by one observer, "This type of note, incorporated in a contract or other document, attempts *in advance* of any legal controversy to authorize ... the entering of judgment without notice and hearing for the amount confessed." (Note, *Cognovit Revisited: Due Process and Confession of Judgment* (1973) 24 Hastings L.J. 1045, 1046, italics in original, hereafter cited as *Note.*) It was this type of *advance* confession which we condemned in the case relied upon by the majority, *Hulland* v. *State Bar* (1972) 8 Cal.3d 440, 449 [105 Cal.Rptr. 152, 503 P.2d 608]. In *Hulland* an attorney (who, of course, owed a continuing *fiduciary* obligation to his client) had exacted such a confession from a new client as security for payment of future legal services. (*Id.,* at p. 443.)

In marked contrast, we are not presented with a case bearing any factual similarity to *Hulland.* In the matter before us, defendant county obtained the written confessions of judgment following its discovery of what it claims was welfare fraud perpetrated on it by plaintiffs. In the case of plaintiff Isbell the claim was followed by a *criminal* prosecution

under section 11482 of the Welfare and Institutions Code; Isbell *pled guilty* to the charged offense and was *jailed.* Plaintiffs Pearson were alleged to have received an overpayment of welfare benefits before they executed their confession of judgment. While plaintiffs did not have the advice of counsel when the confessions of judgment were signed, in the language of a unanimous Court of Appeal herein, ". . . there is not a scintilla of evidence that they did not knowingly, intelligently and voluntarily waive their due process rights." It is significant that the confessions were not buried in the fine print of an adhesion contract. Furthermore, they were directed toward resolving an actual, existing controversy between the parties. The two confessions involved herein bear the caption "County of Sonoma, plaintiff vs. [Eva Isbell] [Omega and Clevie Pearson] defendant," recite that each defendant confesses judgment in a specific sum, and contain a paragraph, *handwritten by the respective debtors,* which admits the facts of the fraud and sets forth a repayment plan. (For example, Isbell's confession stated, in her own handwriting, that "I gave false statements to in [*sic*] which to receive welfare. I plan to pay it back at $20.00 Twenty dollars a month until said debt is paid, after I am released from jail.")

Given the fact that the plaintiffs executed the confessions shortly after the controversy with the county had arisen (rather than as part of an adhesion contract for goods or services executed in advance of default), we may reasonably presume that plaintiffs fully understood their potential liability to the county, and knowingly and voluntarily confessed judgment in order to avoid the expense and inconvenience of contested litigation. So long as a debtor has notice of the existence of the dispute with his creditor and an opportunity to contest the claim if he chooses to do so, the confession of judgment procedure "raises no significant due process problems. This method of confessing judgment without action avoids needless litigation." (*Note, supra,* at p. 1046.)

As previously observed, in 1975 the Legislature acted to protect most adhesion contract debtors from the confession of judgment procedure. Under new section 1132, subdivision (b), a confession of judgment may not be entered against the debtor in an ordinary sale, service or loan transaction unless the debtor's own independent attorney certifies that he has fully informed his client of the facts and consequences, and has advised him to use the confession of judgment procedure.

By reason of the enactment of section 1132, subdivision (b), the interests of the typical adhesion contract debtor have been adequately protected; indeed, the majority does not purport to invalidate that subdivision along with the rest of the statute. The majority's principal reason for striking down the *remaining* provisions appears to be that " 'a consent obtained in such a contract of adhesion is ineffective to waive the constitutional protections . . . .' " (*Ante,* p. 69, quoting from *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 276 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206].) As I have previously explained, however, we are not dealing with the typical *advance* confession clause in an adhesion contract.

The majority, ignoring a record which discloses no evidence whatever of overreaching, concludes that confessions of judgment *"most often"* are executed by debtors "who have little understanding" and "little choice" (*ante,* pp. 64, 65); the cognovit clauses appear *"most commonly"* in adhesion contracts; the nature of the device *"suggests"* a substantial disparity in bargaining power and *"implies"* overreaching; *"historical experience"* shows that "confessions" are *"most frequently employed* against those who are unaware" (*ante,* pp. 69-70, italics added). "Many courts" have observed that signators *"often* do not realize" they are waiving defense rights; thus the debtor's signature creates no inference of a knowing intelligently exercised waiver. (*Ibid.*) "In sum, sad *experience has shown* that the confession of judgment procedure lends itself to overreaching, deception, and abuse," so on its face the confession cannot be voluntary and knowing. (*Ante,* p. 71, italics added.) In short, ignoring the factual record before us, the majority predicates a result based on what it perceives has been the *general* experience with confession judgments, an area which has had, and continues to have, very active legislative interest and attention.

I am convinced that we should, much more wisely, approach this task on a case-by-case basis, invalidating the offending practice only in those situations in which due process standards are actually violated. The majority asserts that the statutes themselves "do not provide for a case by case determination" of the waiver question. (*Ante,* p. 71.) Yet, as the majority recognizes, judicial review is readily available, for the debtor may either move to set aside the judgment (Code Civ. Proc., § 473), or may file an independent action alleging fraud in procuring the judgment (see, e.g., *Olivera* v. *Grace* (1942) 19 Cal.2d 570, 575 [122 P.2d 564, 140 A.L.R. 1328]). As I explain below, the availability of such postjudgment relief clearly satisfies any due process objections. (*D. H. Overmyer Co.* v.

*Frick Co.* (1972) 405 U.S. 174, 188 [31 L.Ed.2d 124, 135-136, 92 S.Ct. 775].) Although such a "case-by-case" approach may lack the simplicity of invalidating the confession of judgment procedure in its entirety, I suggest that such an approach is dictated by the fact that the confession procedure operates in an entirely proper manner in the vast majority of cases.

The majority holds that the confession of judgment procedure is unconstitutional on its face under due process principles because judgment may be entered without "a prejudgment judicial determination of the validity of the debtor's waiver . . . ." (*Ante,* p. 71.) Apart from the fact that in the present case we properly may presume such a valid waiver from the face of the handwritten confessions, in 1972 the United States Supreme Court *unanimously* rejected a similar claim of facial unconstitutionality. Thus, in *D. H. Overmyer Co.* v. *Frick Co., supra,* 405 U.S. 174, the high court reviewed the validity of an Ohio judgment entered *by the creditor without notice to the debtor,* on the basis of the latter's prior execution of a promissory note containing a confession-of-judgment clause. In affirming the judgment, the court expressly noted that "The due process rights to notice and hearing prior to a civil judgment are subject to waiver" (p. 185 [31 L.Ed.2d at p. 133]); that although such a waiver must be knowingly and voluntarily made, the debtor had not contended that it was unaware of the significance of the note's provisions (p. 186 [31 L.Ed.2d at p. 134]); and that the facts disclosed no unequal bargaining power or overreaching by the creditor (*ibid.*). The court concluded in these words, which are fully dispositive of the majority's major constitutional premise: "Our holding necessarily means that a cognovit clause is not, *per se,* violative of Fourteenth Amendment due process. [Debtor] could prevail here only if the clause were constitutionally invalid. The facts of this case, as we observed above, are important, and those facts amply demonstrate that a cognovit provision may well serve a proper and useful purpose in the commercial world and at the same time not be vulnerable to constitutional attack. [¶] Our holding, of course, is not controlling precedent for other facts of other cases. For example, where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the cognovit provision, other legal consequences may ensue." (Pp. 187-188 [31 L.Ed.2d at p. 135].)

The majority has found that three sections of the Code of Civil Procedure violate due process principles. However, the United States Supreme Court, as I have noted, has said that due process rights may be

waived in the cognovit situation. While the waiver must be made knowingly in this case, that fact appears from the face of the handwritten confessions. Having been formally charged with a welfare fraud, and having pled guilty and while serving a jail term therefor, Isbell should, reasonably, be held to have possessed both knowledge of the charge and full opportunity to defend. Similarly, nothing in the record suggests that the Pearsons were ignorant of the nature of the claims against them, the amount involved, and of their opportunity to resist the claim; their own confession, on its face, demonstrates this knowledge.

The high court concluded in *Overmyer* that the debtor was not left without remedy by entry of the confessed judgment, as he may move to vacate the judgment upon a proper showing of a valid defense. (405 U.S. at p. 188 [31 L.Ed.2d at pp. 135-136].) We should follow *Overmyer* and uphold the constitutionality of California's confession of judgment procedure. Although that procedure may, in rare cases, operate unfairly, the Legislature has reformed the procedure as it applies to adhesion contracts, and in all other cases the debtor is afforded the opportunity to nullify the confessed judgment through an appropriate motion to vacate it. There is, moreover, a presumption of constitutionality of a statute. (*In re Ricky H.* (1970) 2 Cal.3d 513, 519 [86 Cal.Rptr. 76, 468 P.2d 204]; 5 Witkin, Summary of Cal. Law (8th ed. 1974) p. 3281.) No satisfying reason appears for invalidating the entire statutory scheme, thereby precluding legitimate use of the confession procedure in those situations where the parties desire to avoid unnecessary contested litigation.

I conclude, in accordance with the *Note* cited above, that "The cases considered clearly state that cognovit judgments are alive and well. They have withstood attacks under the due process clause of the Fourteenth Amendment. Even though a property interest sufficient to warrant notice and hearing is involved, the judicial policy reflected in *Sniadach* and *Fuentes* has not been extended to cognovit judgments. Due process rights can be waived and cognovit judgments can be entered if waiver is evident from the contract containing the cognovit note. [¶] *Overmyer* indicates that the Fourteenth Amendment is almost certainly satisfied if there is an appellate procedure conforming to the requirements of due process . . . . [¶] It can be argued that the duty of the courts is to provide an impartial, neutral forum. Their function is not to demand litigation in every dispute. Since waiver of due process rights can be made, the court's

function is to provide a forum for attacking the validity of waiver if, but only if, the debtor wants to challenge it." (*Note, supra,* at pp. 1064-1066.)

I would affirm the judgment.

Clark, J., and Manuel, J., concurred.

Respondents' petition for a rehearing was denied June 15, 1978, and the opinion was modified to read as printed above. Clark, J., Richardson, J., and Manuel, J., were of the opinion that the petition should be granted.