ATLANTIC FINANCIAL FEDERAL

v.

**David D. BRUNO and Joella M. Bruno.**

**Civ. A. No. 88–0709.**

United States District Court,
E.D. Pennsylvania.

Aug. 31, 1988.

Miles H. Shore, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for plaintiff.

John W. Havins, Edward K. White III & Associates, Houston, Tex., William R. Thompson, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

GAWTHROP, District Judge.

Before the court in this breach of contract case is defendants' Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[1] Plaintiff, Atlantic Financial Federal ("Atlantic"), filed this action seeking recovery of amounts allegedly due it pursuant to a promissory note and other loan documents with David and Joella Bruno (the "Brunos"). Defendants assert that the action should be dismissed because this court lacks personal jurisdiction over them in that they are citizens and residents of the State of Alaska and have never transacted any business within the Commonwealth of Pennsylvania. Upon consideration of the briefs and affidavits submitted in this matter, I shall grant defendants' motion, for the reasons set forth below.

## I. BACKGROUND

David and Joella Bruno are citizens and residents of Alaska. Atlantic Financial Federal is a Pennsylvania bank. Basically, the Brunos obtained a loan from Atlantic to invest in an energy project, Triad American Energy ("Triad"), in California. The Brunos first learned of the Triad project through their attorney, Lance Wells. After attending a meeting and presentation staged by a Triad salesperson in Lance Wells' office in Anchorage, Alaska, and reviewing various documents describing Triad, David Bruno decided to purchase two (2) units in Triad. The paperwork for the purchase and the check for the down-payment were executed in Alaska, in the Brunos' attorney's office. At that time, the Triad salesperson told David Bruno that Triad would arrange a loan to finance the remainder of the purchase price. Although the Brunos never solicited a loan with Atlantic, made application for a loan from Atlantic, nor communicated whatsoever with Atlantic (Bruno Supplemental Affidavit, p. 3), on December 30, 1985, a set of loan documents from Atlantic was forwarded to the Brunos in Glennallen, Alaska by air courier. Upon receipt of the loan documents David Bruno telephoned his attorney to inquire about Atlantic and learned that Atlantic was the financing agent arranged by Triad. Thereafter, without negotiation, the Brunos executed the loan documents, including a note for $205,000 (the "Note"), and delivered them to the air courier pilot who returned them to the Brunos' attorney in Anchorage. Bruno Supplemental Affidavit, p. 3.

Approximately a year after the Triad Project was initiated the project went belly-up and Triad filed for bankruptcy. Thereafter the Brunos discontinued their payments on the Note to Atlantic and Atlantic filed this action.

## II. DISCUSSION

In considering a motion to dismiss, the court ordinarily takes as true the allegations in the complaint. However, this general rule does not apply where the movant is challenging *in personam* jurisdiction. When the defendant mounts such a challenge, the plaintiff bears the burden of proving that the defendant's contacts with the forum are sufficient. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984). The plaintiff must come forward with sufficient jurisdic-

---

1. Subject matter jurisdiction for this case is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a).

tional facts by affidavit, deposition or other competent evidence to establish the court's jurisdiction over the defendant. *Time Share*, 735 F.2d at 66–67, *Allen Organ Co. v. Kawai Musical Instruments Manufacturing Co., Ltd.*, 593 F.Supp. 107 (E.D.Pa. 1984).

Fed.R.Civ.P. Rule 4(e) permits this court to exercise personal jurisdiction over non-resident defendants to the extent permitted by the laws of Pennsylvania. Under Pennsylvania's long-arm statute, 42 Pa.Cons. Stat. § 5301, *et seq.*, there are two bases by which a non-resident defendant may become subject to the jurisdiction of this court. The first, general jurisdiction, exists when a non-resident defendant is carrying on a "continuous and systematic part of its general business within [the] Commonwealth." 42 Pa.Cons.Stat. § 5301. A defendant found to maintain such a presence is subject to the court's jurisdiction even if the cause of action does not arise out of or is unrelated to the defendants' forum related actions. 42 Pa.Cons.Stat. § 5301(b). *Dollar Savings Bank v. First Security Bank of Utah*, 746 F.2d 208, 211 (3d Cir.1984).

If, on the other hand, the defendant is not usually found within the state, but the cause of action arises from defendant's forum-related activities, personal jurisdiction over that defendant is specific. Section 5322 of the long arm statute authorizes the exercise of "specific jurisdiction" over out-of-state defendants in suits arising out of the defendants' forum related activities.

In addition, 42 Pa.Cons.Stat. § 5322(b) expressly provides that jurisdiction is authorized "to the fullest extent allowed under the Constitution of the United States." Because Pennsylvania's long arm statute expressly incorporates the federal due process standard, it is only necessary to inquire whether the exercise of jurisdiction over the Brunos offends due process. *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 490 (3d Cir.1985).

Due process requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," *Burger King Corp.*

*v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In other words, defendants must have such minimum contacts with Pennsylvania sufficient enough to make it reasonably foreseeable that they might be called upon to defend an action here. Where a forum seeks to assert specific jurisdiction over a non-consenting out-of-state defendant, the fair warning requirement is satisfied if the defendant has "purposely directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to those activities." *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182 (citations omitted).

The Brunos argue that personal jurisdiction does not exist over them because they do not have sufficient contacts with Pennsylvania. In support of their argument, the Brunos have attached several affidavits recounting their alleged lack of contacts with this forum.

Atlantic argues that the Brunos should be subject to jurisdiction in this action because they consented to jurisdiction through the Confession of Judgment clause contained in the Note. Atlantic further argues that the Brunos have sufficient contacts that bring them within the reach of Pennsylvania's long-arm statute through their execution of the loan documents and subsequent payments on the Note.

■ The Confession of Judgment clause contained in the Note provides in pertinent part:

The undersigned hereby irrevocably authorized [sic] and empowers the prothonotary or clerk or any attorney of any court of record to appear for and confess judgment therein against the Undersigned, or any of them, for the amount which from the face hereof may appear to be due hereon....

Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss, Exhibit A. Although parties may contractually submit to the jurisdiction of a given court, the forum-selection clause must specify the forum with particularity before it will serve as a consent to the court's jurisdiction. *Atlas Credit Corp. v. Ezrine*, 303 N.Y.S.2d 382,

250 N.E.2d 474, 25 N.Y.2d 219 (1969). Thus, because the Confession of Judgment clause at issue does not specify a given court, it will not serve as a consent to jurisdiction in this court. Moreover, even if the clause at issue were forum specific, it is only when forum-selection provisions "have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' [that] their enforcement does not offend due process." *Burger King, supra* 471 U.S. at 472 n. 14, 105 S.Ct. at 2182 n. 14, *quoting The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Here, the Confession of Judgment clause was not freely negotiated. *See* Bruno Supplemental Affidavit, p. 3.

■ Next, I consider plaintiff's argument that the Brunos have purposely established sufficient contacts to subject them to the reach of Pennsylvania's long-arm statute. In attempting to satisfy the minimum contacts requirement, Atlantic submitted an affidavit from its Assistant Vice President of Commercial Lending, alleging that the following transactions by the Brunos took place within Pennsylvania:

> Sometime in December, 1985, David D. and Joella M. Bruno applied to Atlantic Financial Federal for a loan for the purpose of investing in a wind turbine at a wind park in Southern California.

> Based on the information in the loan file, no representative of Atlantic Financial Federal solicited the loan.

> In connection with their application for credit, the Brunos, or their agent, delivered verification of their income and financial condition to the Atlantic Financial Federal lending office in Bala Cynwyd, Pennsylvania.

> The creditworthiness of the Brunos was analyzed and approved by Atlantic Financial Federal at its lending office in Pennsylvania.

> On December 30, 1985, the Brunos executed and caused to be delivered to Atlantic Financial Federal Pennsylvania their Promissory Note in the principal amount of $205,000.00 with interest....

> The Brunos also executed and caused to be delivered to Atlantic Financial Federal in Pennsylvania other documents including a Borrower's statement of business purpose, a disclaimer of Atlantic Financial Federal's responsibility for intended investment, a security agreement, and an authorization to pay proceeds....

> The executed promissory note and related documents were reviewed in Pennsylvania by an officer of Atlantic Financial Federal, David Barr, as well as by other officers, and approved and accepted by the the the [sic] bank.

> Once the loan documents were accepted, the transfer of the proceeds of the loan was authorized from Atlantic Financial Federal in Pennsylvania to Triad American Energy, as directed by the Brunos.

> The Promissory Note provides for nineteen consecutive quarterly payments in the amount of $3,416.67 and one final quarterly payment in the amount of $140,083.27 to be paid at Atlantic Financial Federal at its offices in Bala Cynwyd, Pennsylvania.

> Mr. and Mrs. Bruno tendered five payments under the Promissory Note to Atlantic Financial Federal in Pennsylvania beginning in April of 1986 and ending in April of 1987.

> Mr. & Mrs. Bruno failed to make the payments due on July 1, 1987 and thereafter in Pennsylvania.

The Supreme Court has long recognized that the unilateral activity of those who claim some relationship with a nonresident defendant does not satisfy the requirement of contact with the forum State. *See Burger Corp. v. Rudzewicz, supra, quoting Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The bulk of Atlantic's allegations are merely a recitation of unilateral activity on its part, which is insufficient to establish minimum contacts on the part of the Brunos. Simply because Atlantic itself, in Pennsylvania, reviewed and analyzed financial information regarding the Brunos and transferred the proceeds of the loan, those acts do not in any way show that the Brunos

performed acts by which they could reasonably expect to be haled into court in Pennsylvania. Because plaintiff's conduct was in pursuance of its agreement with defendants does not, for jurisdictional purposes, impute that conduct to defendants. *See Pennsylvania Manufacturers' Association Insurance Company v. Township of Gloucester*, 493 F.Supp. 1047 (E.D.Pa. 1980). In essence, the only activities on the part of the Brunos that constitute contacts with Pennsylvania are the execution of loan documents (in the State of Alaska) with a Pennsylvania bank, and the making of payments on the Note.

The mere entering into a contract by a party in Alaska with a bank in Pennsylvania does not constitute sufficient contacts to establish personal jurisdiction. *See Burger King, supra*, 471 U.S. at 478, 105 S.Ct. at 2185. It is the circumstances surrounding the contract, the prior negotiations, contemplated future consequences, and the parties' actual course of conduct, which are important and must be evaluated along with the terms of the contract to determine whether the defendant purposefully established minimum contacts with the forum. *Id.* at 479, 105 S.Ct. at 2185. In this case, by contrast to the defendant in *Burger King*,[2] the Brunos did not solicit, nor negotiate any of the terms of the contract directly with Atlantic. Conversely, it appears from the Brunos' affidavits that Atlantic or its agent, a Triad salesperson, solicited the Brunos' loan.[3] By comparison, in *Burger King*, the defendant deliberately sought to enter into a franchise agreement with Burger King and conducted extensive negotiation, both before and after entering into the franchise agreement, communicating directly with the Burger King headquarters in the forum state. 471 U.S. at 467 n. 7, 105 S.Ct. at 2179 n. 7.

Similarly, Atlantic has not established that the Brunos contemplated any significant future consequences from their execution of the loan documents in Alaska. The

---

**2.** *Burger King* involved a Michigan citizen who entered into a franchise agreement with Burger King, a Florida corporation, to operate a Burger King restaurant in the state of Michigan. The standard Burger King agreement required a franchisee to pay Burger King an initial fee of $40,000 and to commit to pay monthly royalties, advertising and sales promotion fees, and rent. 471 U.S. at 465, 105 S.Ct. at 2178. In exchange, Burger King would grant the use of its trademarks, service marks, and standardized restaurant facilities for a twenty-year period. Burger King would also provide its franchisees with a variety of information regarding the operation of its restaurant, marketing and advertising assistance, ongoing restaurant management training, and accounting, inventory and cost-control guidance. *Id.* Defendant and his partner operated a Burger King in Drayton Plains, Michigan for a short while before the business began to feel the effects of a recession. After defendant and his partner fell behind in their monthly payments to the Burger King corporate office in Miami ("Headquarters") and after extensive but unsuccessful negotiations, Headquarters terminated the franchise agreement. When defendant continued to operate his franchise, Burger King commenced suit in the United States District Court for the Southern District of Florida. *Id.* Defendant asserted lack of jurisdiction over his person in Florida. The lower court upheld jurisdiction, the appellate court reversed, and the United States Supreme Court reversed the appellate court, holding that there was personal jurisdiction.

Plaintiff relies heavily on this case because, like the case at bar, it involves a defendant who had no ties with the forum state other than the contract he had entered into. It is this case in which the Supreme Court determined that a contract alone is not sufficient to confer jurisdiction, but that a contract together with the factors of prior negotiations, contemplated future consequences, and the parties' actual course of dealing, could be enough to confer jurisdiction. *Id.* at 478, 105 S.Ct. at 2185.

**3.** Atlantic contends that "[b]ased on the information in the loan file, no representative of Atlantic Financial Federal solicited the loan." Affidavit of Frank Muni, Plaintiff's Exhibit to its Brief in opposition to this Motion. It is axiomatic that a failure to find written evidence of an act is not conclusive evidence that the act, in truth, did not occur. Thus, David Bruno's affidavit, which I find more compelling, does not directly contradict Mr. Muni's affidavit when it states:

Neither my wife nor I solicited the loan of $205,000.00 from Atlantic Financial Federal. Prior to December 30, 1985 [the date we received the loan documents] neither my wife nor I had had any communication of any type with Atlantic Financial Federal. Neither my wife nor I made a loan application to Atlantic Financial Federal. Neither my wife nor I prepared or delivered financial statements to Atlantic Financial Federal. We simply signed the loan documents that were presented to us and returned them to our attorney in Anchorage.

only future consequence the Brunos and Atlantic contemplated was that the Brunos would make payments on the Note for a period of four (4) years. Although the Note required that these payments were to be made in Pennsylvania and the Brunos tendered several payments to Atlantic in Pennsylvania, this is not enough to confer a finding of personal jurisdiction. *See Dollar Savings Bank v. First Security Bank of Utah*, 746 F.2d 208 (3d Cir.1984). In *Dollar Savings Bank*, the Third Circuit considered a fact situation very similar to that at bar and held that minimum contacts were not established when a nonresident defendant did no more than borrow from and repay a loan to a Pennsylvania bank. In reaching its decision, the court emphasized that the nonresident defendant had not travelled to Pennsylvania in connection with the transaction and that the defendant executed the promissory notes and security agreements while outside Pennsylvania. The same situation obtains at bar.

Plaintiff attempts to distinguish *Dollar Savings Bank* by pointing out that there, negotiations for the loan occurred in New York, the loan documents were submitted for approval to plaintiff's trustee in New York, and the note contained no clause providing for the application of Pennsylvania law. Plaintiff's brief, p. 8. These distinctions are inapposite because here there were no negotiations whatsoever, either in Alaska or Pennsylvania; nor is, as discussed above, the approval of loan documents, wherever it takes place, a contact on the part of the defendants supportive of jurisdiction.

 Nor does a Pennsylvania choice of law provision, standing alone, confer juris-

diction on this court. *Burger King Corp. v. Rudzewicz, supra; Time Share Vacation Club v. Atlantic Resorts, Ltd., supra.* A choice of law provision is only a factor to show whether defendants could reasonably foresee that their acts would have effect in Pennsylvania; it does not itself vest jurisdiction. In *Burger King*, such a provision was relevant to, but not determinative of, jurisdiction. It was only the provision coupled with a "20–year interdependent relationship" between the defendant and the plaintiff's corporate headquarters in the forum state, that ultimately conferred jurisdiction. 471 U.S. at 482, 105 S.Ct. at 2187. Here, there is no interdependent relationship.[4]

Unlike in *Burger King*, future business collaborations were not contemplated by either of the parties to this action. The contract there was a franchise agreement that had a term of twenty (20) years. By its very nature, a franchise agreement is different from a loan agreement or a promissory note. A franchise agreement ensures a substantial and continuing relationship between the parties in order to promote their common business interest. The defendant in *Burger King* needed to maintain contacts with the plaintiff in the future to get the benefits of plaintiff's expertise in training,[5] market research and advertising. Here, there was no such need.

Thus, Atlantic's affidavit has failed to prove that the Brunos have significant contacts with the forum state to warrant the exercise of *in personam* jurisdiction over them. Since Atlantic has not demonstrated any other affiliations between the Brunos and Pennsylvania, I conclude that jurisdiction is lacking.[6]

---

**4.** In *Baron & Co. v. Bank of New Jersey*, 497 F.Supp. 534 (E.D.Pa.1980), which involved analogous facts, Judge Luongo held that the defendant did not purposefully avail itself of the privilege of acting within Pennsylvania merely be executing a contract containing a Pennsylvania choice of law provision.

**5.** Defendant's partner attended a training course in the forum state to satisfy Burger King's training requirements before defendant began business operations of his franchise. 471 U.S. at 479 n. 22, 105 S.Ct. at 2186 n. 22.

**6.** This case is distinguishable from *Ganis Corp. of California v. Jackson*, 822 F.2d 194 (1st Cir. 1987) where defendants' agent solicited the loan and where defendants transmitted a misrepresentation to the forum state. The defendants executed a "Notice of Buyer's Acceptance of Marine Vessel" for receipt of a boat they did not actually receive. The court relied on this misrepresentation in finding that jurisdiction existed. It stated "[t]he transmittal of such a misrepresentation, even if unwitting, has been held to represent substantial contacts for the purpose of finding personal jurisdiction." 822 F.2d at 198

**574**

Moreover, *assuming arguendo* that Atlantic could have established that the Brunos had significant contacts with Pennsylvania, fundamental fairness militates strongly against the assertion of jurisdiction over these defendants on the claims alleged in this action. "[J]urisdiction may not be grounded on a contract whose terms have been obtained through ... 'overweening bargaining power' and whose application would render litigation 'so gravely difficult and inconvenient that [a party] will for all practical purposes be deprived of his day in court.'" *Burger King, supra,* 471 U.S. at 486, 105 S.Ct. at 2189 *quoting The Bremen v. Zapata Off-Shore Co., supra.* The evidence shows that the loan documents were not negotiated at arms length, but rather, there was disparity of bargaining power between the Brunos and Atlantic. Nothing suggests that the Brunos had any latitude to negotiate reduced amounts of interest or a reduced loan origination fee in exchange for the added risk of suit in Pennsylvania. They signed a standard form contract with non-negotiable terms.

Thus, plaintiff's claims must be dismissed for lack of personal jurisdiction over the defendants. An order follows.

*quoting Ealing Corp. v. Harrods, Ltd.,* 790 F.2d 978, 983 (1st Cir.1986).