625 A.2d 75

ACCU–WEATHER, INC., Appellant,

v.

THOMAS BROADCASTING COMPANY, Licensee
of Television Station WOAY–TV, Appellee.

Superior Court of Pennsylvania.

Argued March 10, 1993.

Filed May 19, 1993.

John G. Milakovic, Harrisburg, for appellant.

Thomas K. Kistler, Bellefonte, for appellee.

Before CIRILLO, POPOVICH and HESTER, JJ.

POPOVICH, Judge.

The case involves an appeal of the August 27, 1992, order entering judgment in favor of and granting the Appellee/Defendant's [1] preliminary objections in the nature of a lack of *in personam* jurisdiction and dismissing the Appellant/Plaintiff's [2] complaint. We reverse.

[1] The Appellee/Defendant consists of Thomas Broadcasting Co., licensee of television station WOAY–TV of Oakhill, West Virginia.

[2] The Appellant/Plaintiff is Accu–Weather, Inc. of Centre County, Pa.

In considering a motion to dismiss, this Court is to view as true the allegations in the complaint. However, this general rule does not apply where the movant is challenging *in personam* jurisdiction. When the Defendant mounts such an attack, the Plaintiff must come forward with sufficient jurisdictional facts by (affidavit, deposition or other) competent evidence to establish the court's jurisdiction over the Defendant. See *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66–67 n. 9 (3rd Cir.1984); *Atlantic Financial Federal v. Bruno,* 698 F.Supp. 568, 569–70 (E.D.Pa. 1988).

Under Pennsylvania's long-arm statute, 42 Pa.C.S.A. § 5301 *et seq.* (Supp.1992–93), the manner by which a non-resident defendant/corporation may become subject to the jurisdiction of this Commonwealth's courts is, as herein relevant, by consent. *Id.* at § 5301(a)(2)(ii).

Accu–Weather, Inc. argues that the Defendant should be subject to jurisdiction in this action because it consented to jurisdiction by way of an Agreement dated August 29, 1989, which provided in relevant part:

6. *Acceptance of this Agreement shall occur by Client upon the occurrence of anyone of the following events caused to happen by Client or any of its officers, directors, partners, employees, agents or representatives:* (a) proper execution of this Agreement by Client; (b) *acceptance or access of the Service hereunder or any part thereof,* or (c) access of the service after the expiration of any trial period stated herein or in separate written correspondence; whichever first occurs. *Acceptance of this Agreement by Accu–Weather, Inc. shall occur,* at its election, *upon the occurrence of any of the three events mentioned in the sentence immediately preceding* or upon proper execution of this Agreement by Accu–Weather, Inc. No person has the authority to make representations or warranties on behalf of Accu–Weather, Inc. No person has the authority to make representations or warranties on behalf of Accu–

Weather, Inc. or to bind Accu–Weather, Inc. in any manner except as provided for in this Agreement.

\* \* \* \* \* \*

N. *The parties agree to submit to the Pennsylvania Courts only any dispute arising out of this Agreement or related thereto, and consent to the jurisdiction of said Courts and further agree that any and all matters of dispute shall be adjudicated, governed and controlled under and by Pennsylvania law.* [Emphasis added]

The Agreement also listed the Defendant as the "client" and the service level to be charged: BAUD RATE, 2400; Hours of service per month, 30; Hourly rate, $49; Monthly fee, $1,470; and Overtime hourly rate, $49.

When the Defendant failed to comply with the terms of the Agreement, the Plaintiff filed a complaint on breach of contract grounds wherein it was alleged that a representative of the Defendant, a West Virginia Corporation, made inquiry whether the Plaintiff could provide and make available to the Defendant "access to Accu–Weather's weather data base." Paragraph 3. The Plaintiff forwarded by mail the proposed Agreement, which was followed by a request by the Defendant that the Plaintiff "begin providing service."

The Plaintiff complied with the Defendant's request and made its service "available ..., and Defendant accessed the services provided and continued to access the services even after having reasonable opportunity to reject them, and with reason to know that [the Plaintiff] expected the terms of the written contract ... to apply * * * because Accu–Weather indicated same to Defendant[ ] ... both orally and in letters", copies of which were attached as Exhibit "B" to the complaint. Paragraphs 9 & 10.

Further, the Plaintiff alleged that no timely notice of termination was received from the Defendant, and this caused the August 29th Agreement to renew automatically and created the amount of $84,328.40 due and owing the Plaintiff. In reply, the Defendant filed preliminary objections raising, *inter*

*alia*, a question of personal jurisdiction, one of the grounds being:

> The Defendant did not accept the terms of the Agreement ..., either by executing it or by unqualifiedly accepting benefits under it and therefore did not consent to jurisdiction of the Pennsylvania Courts.... Paragraph 4.

The court below agreed with the Defendant and, by order dated August 27, 1992, judgment was entered in favor of the Defendant. This appeal followed.

Initially, we need to make mention that the court below based its conclusion of law that no contract existed upon the fact that the Defendant, after receipt of the Plaintiff's Agreement ("offer") for a two-year period, "made a counteroffer to accept Plaintiff's services for a three-month period."

It is an accurate statement of the law that a reply to an offer which changes the conditions of the offer is not an acceptance, but a counter-offer. *Hedden v. Lupinsky*, 405 Pa. 609, 176 A.2d 406, 408 (1962). This counter-offer, so found the court, was not agreed to by the Plaintiff and rendered any agreement unenforceable.

On its face, the court's conclusion is correct were it not for being premised upon facts unsupported by the record. The Defendant/Appellee concedes as much in its appellate brief at 2. In such a scenario, we are not bound by either the conclusion of law or the facts underlying it. See *Commonwealth v. Lagamba*, 418 Pa.Super. 1, 613 A.2d 1, 3 (1992). Thus we find meritless the court's conclusion that no binding contract existed *because a counter-offer by the Defendant was never accepted by the Plaintiff*. However, our inquiry is not at an end.

We next need to address whether the August 29th Agreement ("offer") is enforceable despite the absence of the Defendant's execution ("acceptance") of the document.[3]

---

**3.** We respond to the Plaintiff's contention that the failure by the Defendant to affix its signature to a verification or affidavit to the preliminary objections constitutes an admission by the Defendant to all of the averments in the complaint. This assertion is waived for the

It is settled that for an agreement to exist, there must be a "meeting of the minds," ...; the very essence of an agreement is that the parties mutually assent to the same thing, .... Without such assent there can be no enforcible agreement.... The principle that a contract is not binding unless there is an offer and an acceptance is to ensure that there will be mutual assent....

*Hahnemann Med. College & Hosp. of Phila. v. Hubbard*, 267 Pa.Super. 436, 406 A.2d 1120, 1122 (1979) (Citations omitted).

■ Notwithstanding the aforesaid, it is equally well-established that "an offer may be accepted by conduct and what the parties d[o] pursuant to th[e] offer" is germane to show whether the offer is accepted. *Gum, Inc. v. Felton*, 341 Pa. 96, 17 A.2d 386, 389 (1941). Accord *Westinghouse Elec. Co. v. Murphy Co.*, 425 Pa. 166, 228 A.2d 656, 659 (1967); *Selig v. Phila. Title Ins. Co.*, 380 Pa. 264, 111 A.2d 147, 151 (1955); *Commander Petroleum Products, Inc. v. Sun Oil Co*, 61 Dela. 463, 464 (1973); *Borough of Lititz v. McMinn's Road Materials, Inc.*, 60 Lanc.L.Rev. 479, 483–84 (1967); *Basehore v. Stonecraft Products Co.*, 3 Lebanon L.J. 138, 144–45 (1951); *Mezza v. Beiletti*, 28 West.L.J. 211, 213 (1946), rev'd on other grounds, 161 Pa.Super. 213, 53 A.2d 835 (1947); *cf. Matter of Schnur Enterprises, Inc.*, 42 B.R. 202, 205 (Bkrtcy.Pa.1984) ("... agreement for settlement is stated to be the essence of the agreement, it may ... be waived by the conduct of the parties....").

■ With these precepts in mind, we look to the parties' "course of conduct" to assess the presence of a contract. Clearly, the following is evident from the record: 1) Prior to the August 29th Agreement, a representative of the Defendant inquired whether the Plaintiff could provide the Defendant with a service making "access to Accu–Weather's weather data base" available to the Defendant, Complaint, Paragraph 3; 2) In response to the Defendant's inquiry, the Plaintiff mailed the August 29th Agreement to the Defendant for review (the relevant portions of which were reproduced supra), Complaint,

Plaintiff's failure to raise it, initially, in the court below. See Pa. R.App.P. 302(a).

Paragraph 4; 3) The Plaintiff provided and the Defendant had "access[ to] the services ... and continued to access the services" for approximately three months (September, October & November), well beyond any "demo" period refuted by the Plaintiff in its April 12, 1990, letter to the Defendant, Complaint, Exhibit "B"; and 4) No "trial" period is provided for in the August 29th Agreement; and 5) The August 29th Agreement listed specifically that "acceptance or access of the Service" provided by the Plaintiff would constitute one of the means by which "[a]cceptance of th[e] Agreement" would be accomplished by the Defendant, Complaint, Paragraph 6.

Instantly, we have a "course of conduct", spanning a three-month period, whereby the Defendant extracted a benefit from the Plaintiff consistent with the terms of the August 29th Agreement. Even the court below acknowledged as much; to-wit:

> In August, 1989, Defendant contacted Plaintiff to inquire whether Plaintiff could provide Defendant access to Plaintiff's weather data base. On August 29, 1989, Plaintiff forwarded to Defendant by mail a proposed written agreement, and the service to Defendant by Plaintiff was initiated. Defendant used Plaintiff's service until late September, 1989, then did not use the service again until late November, 1989. Defendant used the service from December, 1989, through half of January, 1990.[4]

Opinion 8/27/92 at 2–3. However, the court below relied, erroneously, upon the absence of the Defendant's signature in concluding that the Agreement was unenforceable.

In *Wilson v. Pennsy Coal Co.*, 269 Pa. 127, 112 A. 135 (1920), our Supreme Court was confronted with a parol agreement prepared by the Defendant/Appellant subsequent to an earlier written contract. The Defendant sought to alter the written contract by the subsequent understanding which was

4. As to the discrepancy in dates as to when the Defendant accessed the Plaintiff's service, be it October–November of 1989 or November of 1989–January of 1990, the fact remains that the Defendant had the benefit of the Plaintiff's service by availing itself of the same as contemplated by the August 29th Agreement, i.e ., conduct which we find triggered the binding effect of the Agreement.

never signed by the Plaintiff. In refusing to enforce the latter agreement, the Court observed:

> Briefly stated, appellant's contention is that the parol agreement set up in the affidavit of defense constituted a legally binding contract between the parties, notwithstanding the *failure of the plaintiff to execute the papers evidencing the contract.* This states the only question in the case. The contention of appellant overlooks *a well-recognized rule of law.* Nowhere is this rule better or more concisely stated than in *Maitland v. Wilcox,* 17 Pa. 231, by Lewis, J. It is there said:
>
>> "An arrangement of terms, *in contemplation of a written contract,* is not a perfect agreement upon which *an action can be maintained. To produce this effect, it must be shown, by the acts* or declarations *of the parties, that they intended the agreement to be operative before execution,* and without regard to the writing. This principle is peculiarly applicable to the case before us, where the lease proposed would not have been valid without writing."
>
> Quite as much can be said here. Not only does the affidavit show conclusively that in making the parol agreement the parties had in contemplation the subsequent reduction of the terms to writing, but *there is neither act nor declaration of either party alleged showing an intention that the agreement should be operative before execution,* and without regard to the writing.

269 Pa. at 129–30, 112 A. at 136 (Emphasis added).

Unlike *Wilson,* albeit the Defendant here did not sign the August 29th Agreement, we have a document which declares on its face an intention that the Agreement would "be operative before execution" with the acceptance of/access to a benefit (service) offered and provided by the Plaintiff to the Defendant, which "course of dealing" would be considered the equivalent of embracing the binding effect of the document as if executed.

■ Because acceptance of a contract may be manifested by one's "course of dealings" with the other party, see *West-*

*inghouse Elec. Co.,* supra; *Selig,* supra; *Felton,* supra, the Defendant had a duty to speak when confronted with a document providing, unequivocally, that receipt of the Plaintiff's services would be tantamount to assenting to the binding nature of the August 29th Agreement. Compare *Deolalikar v. Murlas Commodities, Inc.,* 602 F.Supp. 12, 16 (E.D.Pa.1984); *Felton,* supra; *Indiana Mfg. Co. v. Hayes,* 155 Pa. 160, 26 A. 6 (1893); *Chorba v. Davlisa Enterprises, Inc.,* 303 Pa.Super. 497, 450 A.2d 36, 39 (1982); *Continental Bank v. Brodsky,* 225 Pa.Super. 426, 311 A.2d 676, 678 (1973); *Borough of Lititz,* supra; *Mezza,* supra. Its failure to do so is detrimental to the defense of *in personam* jurisdiction.

"It is well-settled that a court's jurisdiction over the person may be conferred by consent or agreement." *Commonwealth ex rel. Rothman v. Rothman,* 209 Pa.Super. 180, 184, 223 A.2d 919, 922 (1966). "It must be recognized that jurisdiction of the subject matter cannot be conferred upon a court by agreement,—contra as to jurisdiction of the person...." *Schleifer v. Zoning Bd. of Adjustments,* 374 Pa. 277, 280, 97 A.2d 782, 784 (1953).

It is also well-settled that parties to a contract may agree in advance to submit to the jurisdiction of a given court, and provide for the appointment of an agent to receive process. *National Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964); Restatement, Judgments, § 18 and comments c and d (1942); Restatement 2d, conflict of Laws, § 32 and comments e and f (1969).

*Brodsky,* supra, 225 Pa.Super. at 429, 311 A.2d at 677; contrast *Atlantic Financial Federal v. Bruno,* supra, 698 F.Supp. at 570–71.

The August 29th Agreement detailed the courts of Pennsylvania as the situs for resolving any dispute regarding the contractual relationship between the parties. Once we conclude, as we do, that the Agreement is efficacious and not eviscerated by the absence of the Defendant's "formalized" execution of the documents, the conduct engaged by the Defendant was sufficient to obligate it to the terms of the Agreement *and* the jurisdiction of this Commonwealth. To

the extent that the court below held to the contrary, it is reversed and the case is remanded for a continuation of the case through the judicial process.

Order reversed, case remanded and jurisdiction is relinquished.