**Bender v. Exeter Township School District**

*Richard L. Guida* and *James E. Gavin,* for petitioner.
*Jon S. Malsnee,* for respondent.

SCHMEHL, J.L., *J.,* July 18, 2003—Twelve-year-old Cassandra Bender was in the sixth grade at Lorane Elementary School, which is part of the Exeter Township School District. On April 24, 2003, Cassandra and another female student had a verbal dispute after which Cassandra was overheard by a cafeteria worker uttering a statement involving the use of the word "kill." [1] Because of this threat the principal of Lorane Elementary

---

1. There is a factual dispute between the school district and Cassandra as to the exact words uttered. According to Cassandra, she said, "I could just kill [her]." The school district claims that Cassandra said "I'm going to kill Katie."

School, Deborah Dawson, suspended Cassandra for three days. On April 30, 2003, a meeting was held whereby school officials drafted a "Confidential IST recall action plan" which stated in pertinent part, as follows:

"(6) No contact will be made with the student involved in threats. If Cassandra makes any contact, such as speaking to a student, she will receive another suspension.

"(7) Threats of any kind toward the other student, made by her directly or to any other person, will result in expulsion from Lorane Elementary School."

On May 1, 2003, Cassandra had a chance encounter with the other girl in the school library where Cassandra either said "hello" or told the other girl that she wanted to talk to her. Deborah Dawson learned of this and immediately suspended Cassandra for an additional five days and informed Cassandra's mother that an informal hearing would take place following her suspension.

On May 9, 2003, Cassandra, her mother, her grandmother, and her attorney arrived at Deborah Dawson's office for this informal hearing. This hearing consisted only of the principal demanding proof of residence from Cassandra's mother and then telling her that Cassandra was being transferred to a disruptive student's unit in an alternative school in Birdsboro, Pennsylvania. When Cassandra's attorney attempted to speak, the principal cut him off and told him to speak to the school's solicitor. Deborah Dawson then told all the parties involved that the hearing was over and indicated that they were to leave her office. The principal's secretary then handed Cassandra a bag which contained her personal effects.

On May 14, 2003, Cassandra, through her mother Caroline Bender, filed a motion for a preliminary injunc-

tion, requesting that the court issue an order to restrain the school district from placing Cassandra in the disruptive student placement facility in Birdsboro. On that same date, this court held a hearing where the following people testified: Caroline Bender, Deborah Dawson, Mary Row (Cassandra's grandmother), and Sharon Althouse (the assistant superintendent of the school district).

On May 16, 2003, this court issued an order enjoining the school district from transferring Cassandra to an alternative educational setting or placing her under any other special or disciplinary status for the remainder of the school year unless subsequent conduct warranted such status. The court also specifically ordered that it was up to the school district to determine Cassandra's placement setting. This appeal followed.

Pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure and an order of this court, the school district filed a concise statement of matters complained of on appeal, asserting the following 10 claims:

(1) The order of May 16, 2003, improperly interferes with the school district's authority to assign a student to an educational placement.

(2) The order of May 16, 2003, improperly interferes with the school district's authority to assign a student who threatens to kill another student to a disruptive student program either under article XIX-CX and article XIX-D or otherwise.

(3) The order of May 16, 2003, improperly interferes with the school district's authority to transfer a student to an alternative education program, designed to meet the needs of non-disabled, disruptive students, without first expelling the student.

(4) The order of May 16, 2003, improperly interferes with the school district's authority to choose the current educational placement for a child by prohibiting a placement in other than an Exeter Township School District elementary school.

(5) The order of May 16, 2003, improperly interferes with the school district's authority to place a child in an alternative education setting by enjoining transferring a student to an alternative education program setting.

(6) The order of May 16, 2003, improperly interferes with the school district's authority to discipline a student by enjoining the school district from placing student under any special or disciplinary status for the remainder of the school year absent additional subsequent conduct.

(7) The order of May 16, 2003, improperly provides injunctive relief which is not in the public interest, but rather undermines the school district's considerable interest in protecting its students from violence.

(8) The order of May 16, 2003, improperly provides injunctive relief which is improper as student has not established by competent evidence a reasonable probability of success or [sic] on the merits.

(9) The order of May 16, 2003, improperly provides injunctive relief which is improper as student has not shown threat of irreparable harm to student if injunction is not granted.

(10) The order of May 16, 2003, improperly provides injunctive relief as student has not shown a clear abuse of discretion of error of law by school district.

This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure and for the following reasons this court asks that the instant appeal be denied.

## THE SCHOOL DISTRICT VIOLATED THE TERMS OF THEIR OWN AGREEMENT WITH CASSANDRA

The basic elements necessary for an enforceable contract are offer, acceptance, consideration or mutual meeting of the minds. *PennDOT v. First Pennsylvania Bank,* 77 Pa. Commw. 551, 553, 466 A.2d 753, 754 (1983). When seeking to enforce a contract, one may look to the conduct of the parties to ascertain an acceptance of the contract. *Accu-Weather Inc. v. Thomas Broadcasting Company,* 425 Pa. Super. 335, 340, 625 A.2d 75, 78 (1993). The determination as to who are the parties to a contract must be decided upon a consideration of all of the facts of the case. C.J.S. Contracts §346. If the answer is not clear from the face of the contract, the question must be determined from the intent of the parties under the general rules of construction. *Id.* Parties are bound to an agreement if they have manifested an intent to be bound by the terms of the agreement, the terms are sufficiently definite, and there is consideration. *Johnston the Florist Inc. v. Tedco Construction Corp.,* 441 Pa. Super. 281, 291, 657 A.2d 511, 516 (1995). "Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract." *Baney v. Eoute,* 784 A.2d 132, 136 (Pa. Super. 2001) (citing *Samuel Rapaport Family Partnership v. Meridian Bank,* 441 Pa. Super. 194, 203,

657 A.2d 17, 21 (1995)). If any ambiguity exists, then the principle of contra proferentem provides that the ambiguity be construed against the drafter. See *Sun Co. Inc. (R&M) v. Pennsylvania Turnpike Commission,* 708 A.2d 875 (Pa. Commw. 1998).

The confidential IST recall action plan constituted a contract between the school district and Cassandra. As part of this agreement, the school district stated that if Cassandra had any future contact, such as speaking to a student she would receive another suspension. It should first be noted that the contact that the movant allegedly had with the other student was a chance and de minimis contact in the extreme. Assuming, arguendo, that the movant violated the terms of the agreement by speaking while they passed each other in a supervised setting, then the remedy provided for in the agreement was for Cassandra to receive another suspension. Nowhere in this agreement does it state that a violation would result in Cassandra being expelled or placed in a disruptive student's unit in an alternative school in Birdsboro. Accordingly, the court did not err in enforcing the agreement.

## THE SCHOOL DISTRICT LACKED THE STATUTORY AUTHORITY TO TRANSFER CASSANDRA TO AN ALTERNATIVE SCHOOL

Pennsylvania's School Code contains the following provisions for alternative placement of disruptive students:

"Section 19-1901-C. Definitions

"For purposes of this article, the following terms shall have the following meanings:

"(1) *'Alternative education program'* or *'program.'* Any applicant's program applying for funds under this article, which program is implemented by a school district, an area vocational-technical school, a group of school districts or an intermediate unit, which removes disruptive students from regular school programs in order to provide those students with a sound educational course of study and counseling designed to modify disruptive behavior and return the students to a regular school curriculum. Notwithstanding section 1502, [FN1] alternative education programs may operate outside the normal school day of the applicant district, including Saturdays. School districts and private alternative education institutions operating pursuant to the provisions of article XIX-E [FN2] shall adopt a policy for periodic review of those students placed in their respective alternative education program for disruptive students. This review shall occur, at a minimum, at the end of every semester the student is in the program or more frequently at the district's or private alternative education institution's discretion. The purpose of this review is to determine whether or not the student is ready to return to the regular school curriculum. Programs may include services for students returning from placements or who are on probation resulting from being adjudicated delinquent in a proceeding under 42 Pa. C.S. ch. 63 [FN3] (relating to juvenile matters) or who have been judged to have committed a crime under an adult criminal proceeding.

"(2) *'Applicant.'* A school district or a combination of school districts which applies for funds under this article.

"(3) *'Community resources.'* Those agencies and services for children and youth provided by the juvenile court and the Department of Health and the Department of Public Welfare and other public or private institutions.

"(4) *'Department.'* The Department of Education of the Commonwealth.

"(5) *'Disruptive student.'* A student who poses a clear threat to the safety and welfare of other students or the school staff, who [FN2] creates an unsafe school environment or whose behavior materially interferes with the learning of other students or disrupts the overall educational process. The disruptive student exhibits to a marked degree any or all of the following conditions:

"(i) Disregard for school authority, including persistent violation of school policy and rules.

"(ii) Display or use of controlled substances on school property or during school-affiliated activities.

"(iii) Violent or threatening behavior on school property or during school-affiliated activities.

"(iv) Possession of a weapon on school property, as defined under 18 Pa.C.S. §912 (relating to possession of weapon on school property).

"(v) Commission of a criminal act on school property or during school-affiliated activities.

"(vi) Misconduct that would merit suspension or expulsion under school policy.

"(vii) Habitual truancy.

"No student who is eligible for special education services pursuant to the Individuals with Disabilities Education Act (Public Law 91-230, 20 U.S.C. §1400 et seq.)

shall be deemed a disruptive student for the purposes of this act, except as provided for in 22 Pa. Code §14.35 (relating to discipline).

"(6) *'School.' Any school classified by the Department of Education as a middle school, junior high school, senior high school or area vocational-technical school.*

"(7) *'Secretary.'* The Secretary of Education of the Commonwealth." 24 P.S. §1901-19-C. (emphasis added)

Thus, by the plain, unequivocal language of the School Code, placement of disruptive students into alternative schools is limited to those students who currently attend middle, junior high, or senior high schools—not elementary schools. Accordingly, since Cassandra was an elementary school student, Exeter Township School District lacked the authority to involuntarily place her in the disruptive student's unit in the alternative school in Birdsboro.

## THE SCHOOL DISTRICT FAILED TO FOLLOW THE HEARING REQUIRMIENT OF THE SCHOOL CODE

The School Code specifically requires that a school district hold an informal hearing before placing a student in an alternative education program:

"Section 19-1902-C. Applications

"(2) That the applicants have established policies to identify those students who are eligible for placement in the program and that the placement of such students *will comply with the informal hearing procedures set forth in 22 Pa. Code §12.8(c) (relating to hearings).* Notice of the hearing should precede placement in the program.

Where the student's presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process, the student may be immediately removed from the regular education curriculum with notice and a hearing to follow as soon as practicable." 24 P.S. §1902-19-C. (emphasis added)

The informal hearing provisions set forth above state that a student has the right to question any witnesses present at the hearing and that a student has the right to speak and produce witnesses on his own behalf. See 22 Pa. Code §12.8.

The evidence of record demonstrates that the "hearing" conducted by the school district consisted only of the principal telling Cassandra's mother that Cassandra was being transferred to a disruptive student's unit in an alternative school in Birdsboro, Pennsylvania. Clearly, no "hearing" was to take place since the principal had already packed up Cassandra's belongings and had them ready to deliver to her. The principal then told all the parties involved that the hearing was over. Clearly, she did not give Cassandra the right to question any witnesses present at the hearing or to speak or produce witnesses on her own behalf. Accordingly, the school district did not follow the hearing requirement of the School Code and the court did not err in revoking the school district's placement decision.

## THE ACTIONS OF THE SCHOOL DISTRICT HAVE BEEN ARBITRARY AND CAPRICIOUS

The Commonwealth Court has held that a school district has broad discretion in determining school disciplinary policies and the courts are not to interfere unless

it is apparent that the school's actions have been arbitrary, capricious and prejudicial to the public interest. *Flynn-Scarcella v. Pocono Mountain School District,* 745 A.2d 117 (Pa. Commw. 2000). Our Supreme Court has defined "arbitrary" as "conduct . . . based on random or convenient selection or choice rather than on reason or nature." *Thunberg v. Strause,* 545 Pa. 607, 615, 682 A.2d 295, 299 (1996). "Capricious" has been variously defined as "erratic, flighty, or unpredictable."

This court is always reluctant to interfere with a school's disciplinary policies. This court is also well aware that schools today are more sensitive to behavior and communications that may be warning signals of violence following events such as the Columbine tragedy and various other school shootings throughout the country. However, taking all of this into consideration, this court still cannot approve of the actions of the Exeter Township School District. This matter came before this court not on Cassandra's threatening another student, but rather on her conduct following her suspension for that threat and the school district's response to that subsequent conduct. The court was very troubled by the fact that the plan went so awry in one day based upon an incident that was not major. Involuntarily placing a sixth-grade girl in a disruptive student's unit in an alternative school five weeks before the end of the school year because she said "hello" to another student or told the student that she wanted to talk to her is, in this court's opinion, arbitrary and capricious conduct under any definition and is prejudicial to the public interest. It most certainly is extremely harmful to the young girl's education and future psychological makeup. To place a sixth-grade girl

in a school for troubled students, most of whom are there for drug and weapon offenses, should only be done in the most drastic of circumstances. This is certainly not one of those circumstances. Clearly, the school district was abdicating its responsibility and taking the "easy way out." Accordingly, for all the foregoing reasons, the instant appeal should be denied.